FREDERICK W. HOFFMAN *against* THOMAS GALLAHER.

(Decided April 5th, 1875.)

It was agreed that the plaintiff should paint the defendant's portrait for a certain sum, that it was to be left to the defendant's friends to decide if it was a good likeness, and if they so decided, the plaintiff was to take it, otherwise not: *Held*, in an action for the price, that the plaintiff must show that the defendant's friends had decided that the portrait was a good likeness, and that it was error on the part of the court to allow the portrait to be shown to the jury, with the remark that they might see what resemblance there was, if any, between it and the defendant; and that the plaintiff was entitled to recover, unless they found that the picture was "so utterly a failure as to be no fair resemblance to the defendant."

That a decision by the defendant's friends was a condition precedent, and that such a condition was not void for indefiniteness. That the defendant should have been asked to name the friends who were to decide, and if he would not, that the portrait should have been submitted to two or more of his friends, and if they were of opinion that it was a good likeness, it would have been a reasonable compliance with the condition.

The plaintiff being asked, upon cross-examination, if he thought it a good likeness, answered yes, and *many of the defendant's own friends : Held*, that the latter part of this answer, not being responsive, could not be considered, the defendant immediately upon the close of the cross-examination, having moved to dismiss the complaint for the want of any evidence that the condition had been complied with.

APPEAL by defendant from a judgment of the general term of the Marine Court affirming a judgment of that court, entered on the verdict of a jury.

The action was brought to recover for the services and materials furnished by the plaintiff in painting a picture of the defendant. On the trial the plaintiff testified as follows in regard to the contract made by him with the defendant, under which he had painted the picture of the defendant: "I am the plaintiff; I know the defendant; he keeps a wine room under the Hoffman House; I have known him over two years. Prior to March, 1873, I had a conversation with him relative to painting a portrait. I said I would paint him a portrait for $100, without a frame, or $125 with a frame, and that I would leave it to his friends to decide if the portrait was a good likeness or not.

If it was a good likeness he was to take it at that stated price; and if it was not a good likeness, he was not to take it; I would paint it on my own risk."

The other facts of the trial are stated in the opinion.

*Joseph H. Dukes*, for appellant.

*E. Goldsmith*, for respondent.

DALY, Chief Justice,—The complaint is upon a special agreement; that the plaintiff painted a portrait in oil of the defendant, upon the defendant's promise and agreement to pay the plaintiff $150 for it; that the plaintiff tendered the portrait and the defendant refused to take it. The contract proved was a different one, but as the testimony was received without objection, the recovery would be sustained, if the plaintiff had established performance of the contract proved.

. According to the plaintiff's evidence, the contract was that the defendant was to take the portrait and pay $125 for it, with a frame, if it was a good likeness, and whether it was a good likeness or not, was to be left to the defendant's friends to decide. This was somewhat general, as no particular persons were designated, but it was a good condition, being one that could be complied with. If the defendant refused to take it he could have been asked to name the friends who were to decide, and if he would not do so, the portrait might be submitted by the plaintiff to two or more of the defendant's friends, and if they were of opinion that it was a good likeness, the plaintiff would then be in a position to show that there had been on his part a reasonable compliance with the condition (*Martin* v. *Leggett*, 4 E. D. Smith, 257; *Butler* v. *Tucker*, 24 Wend. 449; *Smith* v. *Briggs*, 3 Denio, 73). Something of this kind was indispensable, for it was a condition precedent that the plaintiff was to take it *if* his friends should decide that it was a good likeness, and unless there was a reasonable and substantial compliance with this condition, there could be no recovery (*Worsley* v. *Wood*, 6 Term R. 710). In the case cited, one part of the condition was to procure a certificate of four reputable householders of the parish. "Perhaps it is difficult," said Ashurst, J., "to ascertain who shall be called reputable or substantial persons;" but he held,

nevertheless, that the condition had to be complied with, and Lord Kenyon, in delivering his opinion, said : " However improbable the thing may be, it must be complied with, or the right which was to attach on its being performed, does not vest." An impossible covenant is void, which Platt illustrates by a condition that a man shall go from London to Rome in three hours; but, says the same writer, " a covenant, if it be within the range of possibility, will be upheld, however absurd or improbable the event may be, as if it shall rain to-morrow, or if the Pope shall be at Westminster on such a day " (Platt on Covenants, pp. 570, 571; *Parodine* v. *Jayne*, Alleyn, 27; *Atkinson* v. *Ritchie*, 10 East, 530; Rolles Abm. Condition D.).

There was no proof given of a decision by any of the defendant's friends, that the portrait was a good likeness, or that the defendant was asked to name the friends who were to decide, or that the plaintiff submitted the portrait to any of the defendant's friends for a decision. This question was put to the plaintiff upon cross-examination : " What did he (the defendant) say about his friends? *Answer*. That some did not think it a good likeness. *Question*. You thought otherwise? Yes (and many of his own friends)." The latter part of this answer, not being responsive, should not have the effect of evidence, as the defendant, immediately upon the close of the cross-examination, moved to dismiss the complaint, there being no evidence that the condition had been complied with, which was equivalent to asking the judge to disregard the latter part of this answer.

The defendant showed that he had been greatly importuned by the plaintiff to allow him to paint the portrait, and that the defendant had many times refused; that, at last, to get rid of his importunities, the defendant consented, but told him that if the portrait did not please the defendant and his friends, there was no agreement, no contract on the defendant's part to take it for a dollar, even if it were worth a million, the plaintiff having said that it was to be painted entirely to the defendant's satisfaction, and to suit his friends. The defendant also testified that he did not like it; that he showed it to two artists, who were his friends, and that they did not like it, and that the people he showed it to said that it was a poor likeness.

Hoffman v. Gallaher.

The plaintiff, under the defendant's objection, was allowed to introduce the portrait in evidence, and to show it to the jury, that they might, in the language of the court, "see what resemblance there was, if any, as a likeness, between the portrait and the defendant," to which the defendant specifically excepted, and the jury, after a lengthy charge from the court, found a verdict for the plaintiff for $100.

The defendant had not agreed to take the portrait if a jury should be of the opinion that it was a good likeness. Even upon the plaintiff's statement of the contract, the defendant had made his own condition; that he would take it if his friends should decide that it was a good likeness, and unless there was a compliance with that condition, he was not bound. The contract, according to the defendant's testimony and that of his witnesses went even further than this; that is, that it was to be entirely optional with him whether to take it or not; that he was not to take it unless it pleased him and what friends he chose to show it to, and two of his witnesses swore that the plaintiff expressly agreed that the defendant was not to take it unless it suited him, and one of them, that the plaintiff said: "I will paint it at my own risk," and yet the whole matter of performance; of a compliance with the condition, according to the plaintiff's own statement of the condition, was reduced to a question whether, in the judgment of the jury, it was a good likeness. The judge said to the jury: "You have seen the portrait;" and then, after some further observations as to whether it was a caricature or would expose him to ridicule; whether it was painted for the plaintiff's benefit alone, or from the defendant's wish to have his portrait to hang up for the adornment of the place of public resort which he kept, and that if the latter, "then," said the judge, "I charge you that unless you find that this picture is so utterly a failure as to be no fair resemblance of the defendant, he is bound to pay for it—$125 with a frame, or $100 without; provided you find that such a contract was made," there not being a particle of evidence in the case to show that there was any such contract. It was, in effect, telling the jury that the question in the case was whether the portrait was painted for the plaintiff's benefit alone, or was ordered by

the defendant to be painted for his own use, and that if they came to the latter conclusion, and it was a fair resemblance, of which they were to judge, the defendant was bound to pay for it. This was not the contract, even upon the plaintiff's statement of it, and the judgment should be reversed and a new trial ordered, with costs to abide the event.

ROBINSON and LARREMORE, JJ., concurred.

Judgment reversed.