### GRAY *v.* ALABAMA NAT. BANK.[1]

*(Common Pleas of New York City and County, General Term.   April 20, 1891.)*

1. CONTRACTS—INTERPRETATION.

    Defendant bank, by its president, gave a lithographic company a written order for a quantity of drafts, which contained a provision that the president was to have "a satisfactory design" for the plate from which the drafts were to be engraved. Three designs submitted to the president were rejected, for defects which he pointed out, and he objected to the third as returning to errors previously corrected; and held out no encouragement to the company to continue its efforts, and made no suggestions for further alterations. *Held* that, as the work involved taste and personal preference, there could be no recovery on the order without showing that the president was satisfied with the design; and that the rights of the parties were fixed on the rejection of the third proof, although the president thereafter permitted the company to go on and make alterations in the design, there being no evidence that he expressed satisfaction with any proof afterwards submitted.

2. SAME.

    That the president suggested alterations in designs submitted to him did not amount to a substitution of his judgment for that of the lithographic company, so as to preclude him, when such alterations were made, from saying that he was not satisfied with the result.

Appeal from city court, general term.

Action by Olin D. Gray against the Alabama National Bank. Plaintiff appeals from a judgment of the general term of the city court affirming a judgment of that court entered on a trial by the court, a jury having been waived, and affirming an order denying a motion for a new trial. For former report, see 10 N. Y. Supp. 5.

Argued before DALY, C. J., and BISCHOFF, Jr., and PRYOR, JJ.

*William B. Ellison*, for appellant.   *T. Frank Brownell*, for respondent.

DALY, C. J.   About June 8, 1887, the defendant, the Alabama National Bank, having its office in Birmingham, Ala., by its president, gave to the plaintiff's assignor, the August Gast Bank-Note & Lithographic Company, doing business in St. Louis, Mo., an order to make 50,000 steel-plate drafts, to be delivered and paid for in two lots of 25,000 each,—the first delivery by November 15, 1887. This order was given upon the solicitation of a traveling salesman of the lithographic company, and was in writing, and contained a provision that it was given upon the understanding that the president of the

[1] Motion for reargument or for leave to appeal to court of appeals, denied, post, 959, mem.

bank was to have "a satisfactory design" for the plate from which the drafts were to be engraved.   The first design was submitted to the president on July 5, 1887, and he requested a new design, which was submitted on July 16th. The second design was returned on July 19th to the bank-note company, with a letter, in which the president stated that he liked it better than the first, but still it did not strike him as being a handsome draft, and he specified five features in it which he said he did not like. ' The company on July 25th replied in a letter, in which they assumed that the work was done to his liking with the exception of some minor matters of detail, and stated that they would follow his instructions, and show him a complete proof before printing.   No answer was made to this letter.   On September 8th the company sent a third proof of the design, and on the 12th the president wrote them as follows: "Yours inclosing check received.   In this sample you return to errors corrected in other, *e. g.*, scroll-work around name.   I do not wish to appear captious about the thing, but really none of the samples you send me suit me.   It is possibly my fault, but all the same, unless I can get something that does please me, I don't want to make any change.   It looks to me as if we had wasted about as much time on this as it is worth."   On the 17th September the company replied, admitting the error mentioned, and stating they would make a new proof.   No acknowledgment of this letter was made by the defendant, but defendant, shortly after the letter of the 12th, entered into contract with other parties for the engraving of the drafts.   On September 21st a corrected design was sent to the defendant, which was not acknowledged.   A further proof was sent on October 11th.   In the latter part of October the salesman called upon the president, who said he had not received the last proofs.   New proofs were transmitted to him on November 14th.   The salesman testifies to statements of the president as to finally being satisfied with the second proof, with the exception of the scroll-work around the title.   This was remedied in the last proof submitted.   The president, however, denies that he had the interview with the salesman at with this is said to have taken place, and that he at at any time expressed satisfaction with the design submitted.   The rights and obligations of the parties are clearly defined by law.   In *Boiler Co.* v. *Garden*, 101 N. Y. 387, 4 N. E. Rep. 749, it was held that where the contract is for work that is to be done or services to be rendered to the satisfaction of the employer, compensation does not depend upon the sole arbitrary decision of the latter, but upon whether the contract has been performed according to its terms, for "that which the law will say a contracting party ought in reason to be satisfied with that the law will say he is satisfied with." But "another rule has prevailed where the object of a contract was to gratify taste, serve personal convenience, or satisfy individual preference.   In either of these cases the person for whom the article is made or the work done may properly determine for himself—if the other party so agrees—whether it shall be accepted.   One who makes a suit of clothes, (*Brown* v. *Foster*, 113 Mass. 136,) or undertakes to fill a particular place as agent, (*Tyler* v. *Ames*, 6 Lans. 280,) mould a bust, (*Zaleski* v. *Clark*, 44 Conn. 218,) or paint a portrait, (*Gibson* v. *Cranage*, 39 Mich. 49; *Hoffman* v. *Gallaher*, 6 Daly, 42,)—may not unreasonably be expected to be bound by the opinion of his employer honestly entertained."   In *Hoffman* v *Gallaher*, cited with approval above, where a portrait was to be painted which was to be submitted to the judgment of the sitter's friends to decide if it was a good likenesss or not, it was held that such decision was a condition precedent to payment.   In *Moore* v. *Goodwin*, 43 Hun, 534, where the contract was to make a crayon portrait, which was to be satisfactory to the person ordering it, it was held that neither the other party nor the jury could decide that he ought to be satisfied with it.   The court said: "We understand that when a person contracts to perform work to the satisfaction of the other party to the contract, and the subject involved is a matter of taste, like the painting of a portrait, the rule is that the person for whom

the work is to be done is the sole judge, and, if he refuses to accept the work on the ground that it is not satisfactory, his decision cannot be questioned,—one of the terms of the contract being that the work shall be satisfactory to him, if it is not so, the contract is not performed, and he is not liable.   He did not agree to accept what might be satisfactory to others unless it was satisfactory to him, and the contract does not give to the opposite party, or to a jury, nor to any other person, the right to decide whether he is or ought to be satisfied."

The contract now under consideration is one for work involving a matter of taste and personal preference in the design to be engraved for the drafts for the bank, and the contractor agreed to furnish a design which should be satisfactory to the president.   Under the authorities no recovery can be had unless it be shown that the president was satisfied with the design.   The appellant does not quarrel with the rule, but claims that the president did not honestly entertain the opinion that the design was unsatisfactory, because he allowed the plaintiff to go on and make alterations, (as I understand the charge,) with the preconceived intention not to approve the design, because he had given the order to other parties; and also contends that the plaintiff should recover because the president had expressed his satisfaction with the proof presented, and had required certain alterations to be made, on complying with which instructions he was bound to accept and the defendants became liable to pay.   I think that the rights of the parties were fixed by the transaction as to the third proof submitted on September 8th.   That proof was rejected in the letter of September 12th, set out in full above.   The rejection held out no encouragement to the bank-note company to continue its efforts.   No further suggestions for alterations were made.   It was a definite rejection of the proof; and, if the company chose to go on after that, and make further efforts, it was at its own risk.   The defendant, after such rejections, gave the order to other parties; and it cannot be said that he in bad faith permitted plaintiff's assignor thereafter to go on with the work.   It is claimed that the defendant, in a conversation with the salesman, expressed himself as satisfied with one of the proofs except in one particular,—the taking off the scroll,—and that, having directed this to be done, and thus substituted his judgment for that of the engraver, he cannot be held to say that he was not satisfied, or that the company has failed to perform the contract on its part.   As to the facts, the president of the defendant denies that he had any conversation or interview with the salesman after the order was first given, and denies that at any time satisfaction was expressed with any design.   The letters of the parties are the best evidence.   They show the improbability of the testimony of the salesman, because all the three proofs submitted up to September 8th were rejected for defects clearly pointed out.   Referring to them, it no way appears that the president at any time stated that upon the making of any particular alteration the design would be satisfactory.   His last letter points out errors occurring before, then corrected, and now recurring, and the letter of the company admits this error.   As to the claim that the defendant substituted its judgment for that of the company, it is enough to say that the plaintiff cannot complain that the defendant tried to aid it by suggestions towards furnishing a satisfactory design.   The good will of the defendant in so doing cannot be turned as a weapon against it.   There was no estoppel.   The contractor was not induced to change his position.   He could refuse to make the alterations suggested.   If the defendant makes them he knows that the result is still subject to approval.   That this was the understanding in the case before us in plain, for the company submitted a fourth design, without cavil.   The fact that the defendant permitted the plaintiff to go on, after rejecting the third proof, and make alterations, does not entitle plaintiff to recover as for a performance or a prevention of performance.   The defendant did not promise to be satisfied with any alterations made after that

time, and there is no evidence that the plaintiff has expressed any satisfaction with any proof submitted after the third one, rejected on the 12th of September. The judgment should be affirmed, with costs. All concur.