### Adams Radiator & Boiler Works, Ltd., v. Schnader, Appellant.

[Marked to be reported.]

*Contract—Heater—Warranty—Personal satisfaction—Survival.*

Plaintiff sold to defendant's testator a household heater under an agreement in writing which contained the following clause: "We guarantee this apparatus to give entire satisfaction in its operation, and should it prove unsatisfactory after a thorough and reasonable trial we will remove it at our expense." The purchaser died four days after the heater was placed in his house. His executor and sole devisee lived in the house, and to him the heater was wholly unsatisfactory from the day that it was first started, which was in the month of March. With the executor's consent a test was made by an expert plumber in the month of June. The

executor was still dissatisfied, and requested the removal of the heater, and refused to pay the balance due upon it.  *Held :*

(1) That the " thorough and reasonable trial " contemplated by the parties was the use of the heater by the householder under the supervision and attendance of the ordinary household servants.

(2) That in the absence of all evidence of want of good faith on the part of defendant, if he was dissatisfied with the heater after a thorough and reasonable trial of it by ordinary daily use, plaintiffs could not recover.

(3) That defendant, as executor and devisee of the original purchaser, had a right to set up the same defence as the purchaser might have done had he lived and defended in the action.

Argued March 16, 1893.  Appeal, No. 281, Jan. T., 1893, by defendant, Milton H. Schnader, executor of Davis C. Schnader deceased, from judgment of C. P. Berks Co., Oct. T., 1890, No. 55, on verdict for plaintiff, The Adams Radiator & Boiler Works, Limited.  Before GREEN, WILLIAMS, MITCHELL, DEAN and THOMPSON, JJ.

Assumpsit for heater sold and delivered.

The facts appear by the opinion of the Supreme Court.

The court charged as follows by ERMENTROUT, P. J.:

" The plaintiffs in this case seek to recover the sum of $274.03, which they allege is due as a balance upon a certain contract which they made with the defendant for the putting up of a steam heating apparatus.  The respective rights, duties and liabilities of these parties are set forth in an agreement or proposal presented by the plaintiffs to the defendant's father, and accepted by him in his lifetime.

" With regard to the law of this case, the parties have presented to the court certain points which they desire us to affirm as the law of the case.  The defendant asks us to say to you :

" [' That, under the law, the contract in evidence of August 24, 1889, is a guaranty or warranty that the apparatus would work to the satisfaction of Davis C. Schnader, deceased, and that if the evidence of the defendant is believed that, as executor, he fairly and reasonably tried and tested the apparatus, and was dissatisfied with it, and so notified the plaintiffs in this action, there can be no recovery.  *Answer :* This point we refuse.  It raises the question of a personal dissatisfaction, which, under the agreement in evidence, we hold is not a question in this case."] [1]

" ' 2. That if the evidence of the defendant is believed, that he fairly and reasonably tested the heating apparatus, and that the same was unsatisfactory to him, that under the law the executor can in this action recover the money he paid on account, with interest from the date of its payment. *Answer:* This point is refused for a similar reason, and also that, even if the theory of the defendant were right and proper, under the pleadings there could be no recovery.'

" The points presented by the plaintiffs in this case are also refused.

" There is no dispute in this case, gentlemen, that the heater was erected and radiators attached to it and put up in this building.    [If it is shown that the plaintiffs fulfilled their contract, the defendant will be called upon to show why he should not perform the contract on his part.] [2]

" What does this contract call for, and what does the defendant allege as his answer for nonpayment? I do not propose to read the whole of this contract, but it sets out specifically what is required, what is to be done by the plaintiffs.    It sets out the manner of walling in the boiler, the kind of boiler, with the proper automatic damper regulator and check draft, with the valves that are to be used in connecting with the radiators, and other particulars.

" [The prominent points in this contract or proposal are that ' we will heat the apartments in the annex sheet mentioned by a sufficient radiating surface such that a temperature of seventy degrees can be attained in zero weather.] [3]    We guarantee this apparatus for heating by steam to be constructed in a good, thorough, and workmanlike manner, to give entire satisfaction in its operation, and to work entirely noiselessly.    Should it prove unsatisfactory, after a thorough and reasonable trial, we will remove it, at our expense, refund the moneys paid to us on account of it, and will place the building in as good a condition as it was when we received it for the purpose of erecting our steam-heating apparatus.    We will furnish you with the said steam-heating apparatus, complete in all its details, for the sum of four hundred and eighty-two dollars, one half to be paid at the completion of the work, and the remainder sixty days thereafter.'

" When this agreement reads that the apartments are to be

heated 'by sufficient radiating surface such that a temperature of seventy degrees can be attained in zero weather,' it does not mean that when the time of testing arrives there must be zero weather, or that the parties are required to wait until we have zero weather.   It might happen, often probably has, in your experience, that some seasons we have no zero weather.    [The meaning of that clause is that we will heat the apartments by a sufficient radiating surface so that their capacity must be such that a temperature of seventy degrees can be produced in the apartments in zero weather.    You have heard some of the witnesses say that, if they made the test in warm or cold weather, that, according to scientific tests, they can ascertain the degree of heat there must be, what radiating surface there must be, and definitely ascertain what will produce such a temperature in zero weather, even though the test be made in midsummer.] [3]

" The next portion of this contract calls for a guaranty of the apparatus.   It says that it must be constructed in a good, thorough, and workmanlike manner.    Give entire satisfaction in its operations and work entirely noiselessly.    Should it prove unsatisfactory after a thorough and reasonable trial, they are to remove it at their own expense, refund the moneys paid on account of it; one half of the money was to be paid at the completion of the work, and the remainder was to be payable sixty days thereafter.

" It is a guaranty for proper construction in a good, thorough, and workmanlike manner, that it must give entire satisfaction in its operations, and work entirely noiselessly.    In other words, it is a guaranty that the proposal presented by them to the defendant will be carried out from the beginning to the end in all of the details set forth in this contract; that they will put this heater there, as they guarantee, on the premises, that it will operate satisfactorily, work entirely noiselessly, and that it will furnish a degree of heat sufficient to make a temperature of seventy degrees in zero weather in all the apartments, rooms, and halls which the agreement contemplates.

" [What is meant by the word 'satisfactory' and 'unsatisfactory' in this agreement?   The word satisfactory is defined to be a full compliance with the demands and fulfillments of the conditions, purposes, and designs of the particular thing.] [4] The word 'satisfactory' is defined to mean the fulfilling of all

demands and requirements, and we therefore say to you that the meaning of 'satisfactorily' is fulfilling the objects, purposes, conditions and requirements of the contract made, and that 'unsatisfactory' means not fulfilling the objects, purposes, conditions, and requirements of the contract made. The language is, 'should it prove unsatisfactory.'

"What do we mean by 'prove?' To 'prove' is to try by experiment, to test, to be found or ascertained to be by experience or trial; and the use of the words 'after a thorough, reasonable trial,' contemplate that it is the duty of the parties receiving the heater to give it a thorough and reasonable trial for the purpose of ascertaining whether it fulfills the objects, purposes, conditions and requirements of the contract made. [There is no duty on the part of the plaintiff to remove or take it away if they comply with their contract, unless after a thorough and reasonable trial of the heater it should be demonstrated, found, or ascertained, by actual test and experience, a thorough and reasonable trial, that it does not fulfill the objects, purposes, conditions, and requirements of the contract which has been made. It is not a matter of mere impression; it is not a matter of the say-so of the parties who are here before you to-day.] [5]

"Such is the interpretation which the court put upon the words. We say to you that these words mean precisely what the court has said, to wit: 'satisfaction' means full compliance with demand, fulfilling of conditions, and that 'satisfactorily' means fulfilling of demands and requirements, and that 'unsatisfactory' means not fulfilling the objects, purposes, conditions and requirements of the contract made, and that the word 'prove' means to be found and ascertained to be by experience and trial.

"[Now, the plaintiffs say that they performed their contract in every particular; that everything was constructed in a good, thorough, and workmanlike manner, that the operation was proper, as contemplated by this agreement, in every respect, that it worked entirely noiselessly, and that in every particular they complied with this agreement. If that is so, they would be entitled to recover the balance which the agreement calls for.] [6]

"What does the defendant say? He says that this heater

did not prove satisfactory.   Now, the first question comes up, In what respect?   He alleges that whilst the heaters were ample so far as the surface was concerned, and whilst five pounds of steam generated there would be ample with these heaters to heat the rooms to seventy degrees in zero weather, yet, he says, that whilst the apparatus showed five pounds of steam, and whilst the fires were in reasonably good condition, there was not proper radiation of steam in the building, it was not hot but cold.   He complains of water in the apparatus and alleges leakage.

"Now, are those facts established?   A heater does not run itself; it must receive proper attention.   The defendant was bound to make a thorough and reasonable trial, and, unless the apparatus is thoroughly and reasonably tried, the time never came to see whether it was satisfactory or not, because there must be a thorough and reasonable trial given to the apparatus before it can be condemned.   So that you will observe that this is the question in this case for the jury under all the evidence. You will take into consideration what the witnesses have said here so far as the apparatus is concerned.   [Was this apparatus in accordance with the terms of this agreement?   Has it been demonstrated to you that the plaintiffs have carried out their contract in full?   If they have, they are entitled to recover.] [7] If, on the contrary, from the evidence you find that this heater is not up to the requirements of this agreement, and that it failed to do its work; that a thorough and reasonable trial was given to it, and after such thorough and reasonable trial it failed, then there can be no recovery.   That is the whole of this case."

Verdict and judgment for plaintiff.   Defendant appealed.

*Errors assigned* were, (1–7) instructions, quoting them.

*Richmond L. Jones, E. B. Weigand* with him, for appellant. —This case is on all fours with Singerly v. Thayer, 108 Pa. 291, in which the proposal concluded, "warranted satisfactory in every respect."   This case was approved in Kennedy v. Poor, 151 Pa. 472.

If the contract was a personal contract, then it did not survive, and the plaintiff has no right of action against the executor.   If it did survive, then it is only because the contract was

assignable, and passed to the executor as the decedent's legal assignee, with all his rights of action or defence unimpaired : Dickinson v. Calahan's Adm'r, 19 Pa. 226 ; Hauck v. Stauffer's Ex'r, 31 Pa. 235.

*Philip S. Zieber, Baer & Snyder* with him, for appellees.— Our case differs from Singerly v. Thayer. A glance at the proposals in the two cases at once shows the difference. The contract in the Singerly case was as follows : " I propose to put my patent hydraulic hoist in your new building on Chestnut street (including a duplex pump worth $800), according to verbal specifications given by your architect, for $2,300, warranted satisfactory in every respect." This was the entire contract. It imposed no obligation upon Mr. Singerly beyond the implied legal duty of fairness, before deciding whether the apparatus was satisfactory to him or not. In the present case Mr. Schnader was bound to give the heater a thorough and reasonable trial. The arbitrary right of deciding whether the apparatus was " satisfactory " or " unsatisfactory " was personal to D. C. Schnader, deceased, and does not belong to his executor : Potter v. Sterrett, 24 Pa. 411 ; Shreiner v. Cummins, 63 Pa. 374 ; Billings's Ap., 106 Pa. 560.

The cases cited by appellant are not in conflict with the position we here take. Hauck v. Stauffer's Ex., 31 Pa. 235, is not in point at all ; while the case of Dickinson v. Calahan's Admrs., 19 Pa. 227, supports our position.

To justify a refusal to accept the hoister on the ground that it is not satisfactory, the objection should be made in good faith, it must not be merely capricious : Singerly v. Thayer, 108 Pa. 291.

OPINION BY MR. JUSTICE DEAN, May 22, 1893 :

Davis C. Schnader, defendant's testator, the owner of a dwelling house then being built, on the 24th of August, 1889, made a written contract with plaintiffs that they should furnish this house with a steam heater. Among other stipulations is this one :

" We (plaintiffs) guarantee this apparatus for heating by steam to be constructed in a good, thorough, and workmanlike manner, to give entire satisfaction in its operation and to work

entirely noiseless.  Should it prove unsatisfactory after a thorough and reasonable trial, we will remove it at our expense, refund the monies paid to us on account of it, and will place the building in as good a condition as it was when we received it for the purpose of erecting our steam-heating apparatus.  We will furnish said steam-heating apparatus complete in all its details for the sum of four hundred and eighty-two dollars ($482.00) ; one half to be paid on completion of the work, and the remainder in sixty days thereafter."

The specifications of kind and size of materials to be used in the constructions are elaborate.  We do not deem them, so far as this issue is concerned, very material, for the case turns on the construction to be given that stipulation in the agreement just quoted.

Mr. Schnader moved into his house on Tuesday of the last week in March, 1890, and died on the following Saturday.  By his last will, duly proven, he devised the dwelling house to his son, Milton H. Schnader, his executor and this defendant, subject to a life estate in his widow.  Before his death, and before the heater, by use for a reasonable time, had been tested, he paid to plaintiffs about one half the price.

Milton H. Schnader, son, executor and devisee, was in the house with his father for the four days of his last illness, and continued to live there with his mother.  He testified that the heater was wholly unsatisfactory to him from the day it was first started; failed to heat the rooms.  He notified plaintiffs of this when they demanded payment of the last installment of the price, and asked them to defer collection until the following December, when the weather would be colder and a better test could be made.  This they declined to do, and proposed that James N. Scheible, a plumber, should make an examination of the heater; this was concurred in by Schnader, and the last of June or first of July Scheible fired it up, and it worked satisfactorily to him, Scheible, on that day, at that season of the year.  But Schnader was not satisfied, and on the 6th of September, in response to plaintiffs' written demand of August 25th, for immediate payment, requested them to remove the heater from his premises.  The plaintiffs then brought suit for $274.03, the unpaid balance of their contract price.

At the trial, plaintiffs averred complete performance of their

contract according to its terms; defendant denied this.    There was considerable evidence adduced on both sides as to the quality and capability of the heater, which was submitted to the jury by the learned court below, on the theory or construction of the agreement, that if plaintiffs performed their contract according to the specifications, to their own satisfaction and that of the jury, then they should have a verdict.    This instruction the appellant's seven assignments of error complain of.

What is a reasonable interpretation of the contract of plaintiffs when they say, "We guarantee this apparatus to give entire satisfaction in its operation, and should it prove unsatisfactory after a thorough and reasonable trial we will remove it at our expense."    It must be kept in mind, that this was not a piece of machinery designed to accomplish some single or particular purpose in which power and durability alone constitute desirability or satisfactoriness.    A sawmill may be warranted as of a capacity to cut a certain quantity of lumber per day; a locomotive may be warranted to draw a certain number of tons up a certain grade, or around a certain curve; and if there be a guaranty that they shall give satisfaction, it can reasonably be presumed that the specified power was all that was within the mind of the parties when they contracted.    But when the subject of the contract is household furniture, as in McCarren v. McNulty, 7 Gray, 139; or for a suit of clothes, as in Brown v. Foster, 113 Mass. 136; or for a work of art, as in Hoffman v. Gallaher, 6 Daly, 42, and Zaleski v. Clark, 44 Conn. 218, the question is not whether the thing contracted for had a certain strength or a particular dimension as specified in the contract, but there come in to make up satisfaction or dissatisfaction those qualities which please, or those defects which are nothing more than annoying.    A dwelling house heater is in use every hour of the day and night; is absolutely indispensable to the health and comfort of the householder and his family; if all the iron and brickwork be made as specified; the valves, guage-cocks, radiators, boilers and all other parts, measure as set out in the contract; and if, even on one day in the middle of summer on being fired up and operated by an expert plumber, a degree of heat is attained which, in his opinion, comes up to the point fixed in the contract, these facts would not of themselves determine that it was satisfactory to the man who was to use it

in zero weather. If in its ordinary every-day use in heating his house, instead of satisfying him, it was, as he testifies, a constant vexation, we think he was not bound to keep and pay for it.

The reasonable interpretation of the contract is, that Schnader was to be satisfied with the heater; not the plaintiffs; not the plumber, nor other witnesses; not the jury. As is said in Zaleski v. Clark: "It is not enough to say she (the defendant) ought to be satisfied with it, and that her dissatisfaction is unreasonable. She, not the court, is entitled to judge of that. The contract was not to make one she ought to be satisfied with, but one she would be satisfied with."

The rule laid down by this court in Singerly v. Thayer, 108 Pa. 291, is to the same effect, and is clearly applicable to this contract and this evidence. The court says: "He (the defendant) therefore was the person to decide, and to declare whether it was satisfactory. He did not agree to accept what might be satisfactory to others, but what was satisfactory to himself. This was the fact which the contract gave him the right to decide. He was the person who was to test and use it. No other persons could intelligently determine whether in every respect he was satisfied therewith."

The appellees' counsel argue that there is a distinction between this contract and the one in Singerly v. Thayer. In the contract before us, plaintiffs agree to remove the heater "should it prove unsatisfactory after a thorough and reasonable trial," while there are no such words in the Singerly and Thayer contract. But the plaintiffs on the trial alleged, and offered evidence to prove, that at their suggestion and by consent of defendant a test trial was given this heater in June or July. Mr. Adams, for the plaintiff, testified that the trial demonstrated he had complied with his contract; that is his opinion. He admits that a trial at that time of the year would be a theoretical, not a practical one.

The defendant concedes that on that trial it worked better than it usually did, but he was not convinced it would work satisfactorily to him in cold weather. The fair presumption is, that the "thorough and reasonable trial" contemplated by the parties, was its use by the householder under the supervision and attendance of the ordinary household servants. It was not

expected the purchaser would daily employ skilled plumbers or engineers to operate it. In this ordinary and expected use of it from March until June it was unsatisfactory to Schnader; after the trial test made by the expert Scheible, in presence of Adams and Schnader in summer, it still was not satisfactory; was so unsatisfactory that Schnader offered to forfeit all he had paid if plaintiffs would take the heater out.

Of course defendant's dissatisfaction must be genuine, as distinguished from mere caprice or dishonesty; he could not have ordered the heater taken out without a trial by the ordinary methods and service of the householder; nor, for the purpose of evading payment of the balance of the price, could a dishonest declaration of dissatisfaction have been an effectual defence.. But there is no evidence of want of good faith in his conduct; he has a right to defend on the ground that the heater does not work satisfactorily to him, after what he considered a thorough and reasonable trial by the ordinary use of it for more than two months, and especially after the test trial proposed by plaintiffs.

In substance, the court below submitted it as a question of fact to the jury to find from the evidence whether he ought to have been satisfied; this was an erroneous interpretation of the contract. The proper interpretation is : (1) Was there a thorough and reasonable trial of the heater by the ordinary daily use of it? (2) Was the defendant then dissatisfied with it? If he was dissatisfied after such trial, the plaintiff cannot recover. Neither the plaintiff, jury, nor witnesses ought to be permitted to make a contract for him; his contract was, that he was to be satisfied, and plaintiffs must perform their contract in this particular the same as in the item of putting in boilers.

Plaintiff's counsel further argue that the judgment should be affirmed, because this contract was personal alone to D. C. Schnader, defendant's father, who died four days after the heater was put in the house; as he does not survive to indicate dissatisfaction, the defendant has no authority to do so. The plaintiffs raised no such question in the court below, so far as can be learned from the charge or the points presented; but as the case goes back for retrial it is best we should here briefly pass upon it.

It would rather lack equality to hold that the contract liability for the price passed to the executor and devisee, but the right to insist on performance died with the testator; neither reason nor law imposes upon us such a decision. If D. C. Schnader had lived to make such trial of the heater as was intended by the contract, and had expressed no dissatisfaction with it, there would be a conclusive presumption of plaintiffs' complete performance; but as he died almost immediately after it was put in, his executor and devisee has the right to set up the same defence as the testator might have done had he lived. It was not a contract for a suit of clothes, or for a set of artificial teeth, which could be satisfactory to but one person, but for a heater, which was to be satisfactory to the occupant of the house where it was to be put up; death and the last will have made this defendant the occupant, and he has the right to insist that the heater shall work satisfactorily to him, as he has succeeded not only to the property, but to the personal use of it.

The defendant's first assignment of error to the refusal of the court to instruct as requested in first point: " That under the law the contract of August 24, 1889, is a guaranty or warranty that the apparatus would work to the satisfaction of Davis C. Schnader, deceased, and that, if the evidence is believed that as executor he fairly and reasonably tried and tested the apparatus and was dissatisfied with it, and so notified plaintiffs, there can be no recovery," is sustained. This in effect disposes of all the other assignments.

The judgment is reversed, and a venire facias de novo awarded.