## HAVEN v. RUSSELL et al.

(Supreme Court, Special Term, Monroe County. May 2, 1895.)

CONTRACTS—PERFORMANCE—SATISFACTION OF PARTY.

Where an actor and his manager employed a playwright to write a play which should be satisfactory to them, the question of satisfaction involves a matter of taste and fancy, and the playwright cannot recover without showing that the play was actually satisfactory to both of the other parties.

Action by Albert R. Haven against Sol Smith Russell and Fred G. Berger. Complaint dismissed.

Before PORTER M. FRENCH, Esq., Referee.

Edward F. Wellington, for plaintiff.

Cassius C. Davy, for defendants.

FRENCH, R. The plaintiff is a playwright. The defendant Russell is an actor, and the defendant Berger is his manager. There is no evidence in this case of other relationship between the defendants than that implied from the word "manager." There is no evidence of partnership or of joint interest in the moneys to be earned by the production of the play referred to below, or in any other venture.

In January, 1891, after some correspondence, which is immaterial here, the parties met in Philadelphia, and it was, after some negotiation there, orally agreed between them that the plaintiff should undertake to write a play for the defendant Russell to act, having for its central figure a representation of Abraham Lincoln; that said plaintiff should first make a scenario or synopsis of the play, and submit it to the defendants; if that proved satisfactory to them, he was to receive $1,000 and complete the play; if the whole play, as completed by the plaintiff, proved satisfactory to them, they agreed to produce it upon the stage at some time and place to be afterwards agreed upon, and to pay the plaintiff a royalty of $100 for each week's performance, and the $1,000 paid at the time of the receipt of the scenario was to be considered an advance payment on such royalties. On April 22, 1891, the parties next met at Buffalo, and the plaintiff produced his scenario of the play, which was satisfactory to the defendants, and the parties then entered into a written agreement which embodied a part only of the former oral agreement, and by which plaintiff transferred to the defendants, for their absolute use, the said play or "dramatic composition," and defendants agreed to pay him $100 for each week that it should be produced by them, and plaintiff agreed to make such changes in the play as they should mutually agree upon. Plaintiff was then paid a part of the $1,000 promised, and he afterwards received the balance. It was talked at Buffalo that the play would probably be first produced at Chicago, and on subsequent occasions all parties talked of producing it there during the Columbian Exposition in 1893. The plaintiff then wrote his play in full and sent it, act by act, as it was completed, to the defendants, who received the completed play April 22, 1892, and have never produced it anywhere.

Though that part of the contract which was reduced to writing at Buffalo in April, 1891, is silent on the subject, it is proved to be the custom that plays shall be satisfactory to the persons for whom they are written, and upon the submission of this case it was stated in the oral arguments of counsel for both parties, and it is also found in the written briefs of both, that such agreement was included in the Philadelphia oral agreement, and it may be taken as established beyond question that plaintiff's undertaking was to write a scenario and a play, both satisfactory to the defendants.   In the view I take of this case, many of the disputed facts become immaterial, and an examination of a large number of the authorities cited by counsel unnecessary.   Where a contract is made to gratify the taste, serve personal convenience, or satisfy individual preferences, to the satisfaction of the other parties to the agreement, the question of satisfaction is left entirely to the parties to be satisfied.   Courts cannot make agreements for litigants.   They can only carry out or enforce the agreements already made, and the plaintiff cannot urge as a reason for a different rule that his contract may be severe, or one which is made in the interest of the defendants.   It is enough to say that it is the contract which he has made, and certainly, in an action at law based upon it, the court is bound to require that the plaintiff shall have fulfilled on his part all of its conditions.   Against the consequences resulting from his own bargain the law can afford him no relief.   This case does not fall within the rule which applies to some, that a party to a contract must be satisfied when he ought to be satisfied, which is found in Boiler Co. v. Garden, 101 N. Y. 388, 4 N. E. 749, which concerned a contract for the manufacture of boilers, but this case falls within the rule concerning gratification of taste. The value of the work of plaintiff depends upon the drawing power of his play.   The defendants were to reap their advantage from the receipts obtained from those who wished to pay the price of witnessing its production.   Between the artist who paints a picture (Gibson v. Cranage, 39 Mich. 49; Hoffman v. Gallaher, 6 Daly, 42; Moore v. Goodwin, 43 Hun, 534), between the actor employed for the theater, between the man employed to make a suit of clothes (Brown v. Foster, 113 Mass. 136), the one who undertakes to fill a particular place as agent (Tyler v. Ames, 6 Lans. 280), or mold a bust (Zaleski v. Clark, 44 Conn. 218), or instruct in the art of drafting patterns (Johnson v. Bindseil [Com. Pl. N. Y.] 8 N. Y. Supp. 485), to the satisfaction of the other party to the contract, and a playwright writing a play to the satisfaction of his employers, no distinction in applying the rule laid down in the cases can be made.   Each is selected for his particular and peculiar fitness.   The actor, sculptor, artist, playwright, each makes or does something for public approval. Each possesses for his employer a means for attracting an audience. This rule, as applied to playwrights, is found in Glenny v. Lacy (City Ct. N. Y.) 1 N. Y. Supp. 513, where it is said that under such circumstances the employer is the sole judge; that the question of satisfaction to be decided involved a matter of art, taste, and fancy, in respect to which there might be perhaps a difference of opinion, but in respect to which the judgment of the employer was to be con-

trolling, and that in such case the plaintiff was bound to show that the work done was actually satisfactory to the defendant, and by him accepted as such; that the risk of accomplishing such satisfaction was assumed by the plaintiff, and the court cannot compel the defendant to accept the work under the contract, when he is dissatisfied. In contracts, then, of this kind, there seems to be no way to review the decision of the employer on the subject of satisfaction. The contract refers to the mental condition of the employer, and not that of the court or jury, and such seems to be the conclusion of the counsel in this action, for the play which has been written by the plaintiff has not been given in evidence, and I am not asked to find anything concerning its merits.

But the plaintiff's counsel insists that the defendants were satisfied with the play, and expressed such satisfaction, and were therefore bound to produce it. The completed play was received April 22, 1892. Before that time, after the receipt of the prologue and the first act, the defendant Russell had in his letters to the plaintiff expressed his satisfaction, and said that the work pleased him more than he expected. But it is not with the prologue or the first act alone that he must be satisfied; the whole completed play must satisfy him. I find no evidence of expression of his satisfaction after April 22, 1892, except where in the same sentence or letter it also appears that there is still something left for the plaintiff to do to make the play ready for production. The fact that the play was "squibbed," and preparations made for scenery and stage management, conveys to my mind no evidence of satisfaction, for the reason that, from the nature of things, arrangements must have been necessary considerably in advance of the time of production. Scene painters and stage managers, competent for the purposes of the parties, undoubtedly have to be engaged before their services are needed; but further, all agree, as is seen in the letters after April 22, 1892, and the conversation at Rochester in January, 1893, and until the letter expressing dissatisfaction in June, 1893, that the play is very much too lengthy for an evening's entertainment, and that much of it would have to be cut out, and in that particular the play rewritten by the plaintiff. It matters not that the plaintiff, for instance in the Rochester, January, 1893, conversation, asked if he should not then do the cutting, and that he was told by the defendant Russell not to do it until the rehearsal of the play for fear that the wrong thing might be taken out. The fact remains that, up to the moment of expressed dissatisfaction by the defendant Russell, the play was not complete. Work for the plaintiff upon it still remained to be done. He contracted to produce a play satisfactory to the defendants, and the fact of satisfaction, like every other fact necessary to maintain his cause of action, must be established by a fair preponderance of evidence. His work was not done before the commencement of this action. The play has never been reduced to such length as to be suitable for production in a single evening. Until that was accomplished by the plaintiff, the defendant had a perfect right to express their dissatisfaction.

It would not be at all unlikely that defendants might be satisfied

with the prospective view, after a reading of the play as it reached them in April, 1892, and they might believe that the work of cutting out and reducing the length of the play would render it exactly what they wanted, and still they might be very much mistaken. After the cutting of the play, they might find it not at all as expected, and they be then far from being satisfied. Until that time came, until the play in its completed form, ready for production and of suitable length for an evening's entertainment, was presented to them, the time for defendants' satisfaction had not arrived. any more than an expression of satisfaction after reading the prologue and first act indicates satisfaction with the whole play.

Further, the play must be shown to be actually satisfactory to and accepted as such by both defendants. Evidence of satisfaction on the part of the defendant Russell would be no evidence of satisfaction on the part of the defendant Berger. There is no evidence of such relationship between the defendants as to make the defendant Russell's satisfaction the same as the defendant Berger's, or as to make the fact that the defendant Russell may have said that the defendant Berger was satisfied binding in any way upon him. If the play had been written for two actors, and for satisfaction to them, counsel would hardly claim that the satisfaction of one would be equivalent to the satisfaction of both, or that one, by saying that the other was satisfied, could furnish a cause of action against the other, whose defense might be complete but for such statement. I cannot think the situation is in any way changed in that particular because one of the defendants is not an actor. The defendant Berger is a party to the contract, and as much entitled to satisfaction as is the actor Russell. He was under obligation with the actor to produce the play, which, of course, would necessitate the expenditure of considerable amounts of money, and under the contract he could not be asked to expend time and money in such expenses unless he also were satisfied with the play, for such is the agreement made between him and the plaintiff.

After dissatisfaction had been expressed by both defendants, there was an undertaking by plaintiff to rewrite a part of the play, but there is no claim that the play so rewritten was ever accepted in any way, or said by either of the defendants to be satisfactory, and consequently no claim is made by the plaintiff on account of it.

It follows that the plaintiff has failed to establish a cause of action, and his complaint must be dismissed.