Rood vs. Taft and another.

Rood, Appellant, vs. Taft and another, Respondents.

*November 4 — November 24, 1896.*

*Sale of chattels: Pleading: Counterclaim: Defensive matter, when part of counterclaim: Tort or contract? Reply: Waiver.*

1. In an action on a promissory note given in part payment for a stallion, there could be no recovery of damages against the plaintiff for fraud and deceit in the sale, or for a breach of warranty, unless such matter was pleaded as a counterclaim expressly so denominated, and affirmative relief asked.
2. Where matter is pleaded both as a defense and as a counterclaim the defensive allegations will not be construed as part of the counterclaim, in the absence of appropriate words of reference.
3. It is error to permit the jury to find a cause of action *ex contractu* under pleadings showing that the cause of action was founded in tort only, since the defeated party might thus be exposed to imprisonment upon an execution against his person.
4. The failure of a counterclaim to state a cause of action is *held* not to have been obviated or waived by a reply thereto.

APPEAL from a judgment of the circuit court for Green county: JOHN R. BENNETT, Circuit Judge. *Reversed.*

This was an action on a promissory note given by the defendants to the plaintiff for $250, dated October 1, 1890, payable eighteen months after date, with interest. The defendants, admitting the execution of the note, set up as defensive matter, in substance, that at the date of the note the defendant *F. D. Taft* purchased of the plaintiff a certain stallion, kept for breeding purposes, for $700, and, as part payment, conveyed to the plaintiff certain real estate, at the agreed value of $200, and gave the defendant the said note, signed by the defendant *S. C. Taft*, in fact, as surety, in part payment for said stallion; that at the time the plaintiff falsely and fraudulently represented to the defendant *F. D. Taft* that said horse was of the age of seven years, and was a very valuable horse for breeding purposes, and was very sure of getting colts, and that the chief value of the stallion

was in his breeding qualities; that said *Taft* relied upon and believed such false and fraudulent representations, and purchased the said stallion; and that, at the time, it was nine years of age, and was of no value for breeding purposes whatever, as the plaintiff well knew, but was of the value of about $150 only, as a draught horse, whereby the plaintiff cheated and defrauded the defendant in said purchase. It is further stated that the defendant *F. D. Taft* had no opportunity of testing the breeding qualities of the horse until the season of 1891, and did not know of its condition until the spring of 1892, and the unsuccessful trials of the horse for breeding purposes during the season of 1891 and 1892 are detailed. The answer thereafter proceeds as follows: "The defendant, further answering, by way of counterclaim, says that he lost, in his time and expenses in his effort to use said horse for the purpose for which the plaintiff sold him to the defendant, in the season of 1891 and 1892, about $400, and that, in consequence of the false and fraudulent representations made by the plaintiff to the said defendant *F. D. Taft* in respect to said horse, upon which he acted in good faith;" that there was no other or further consideration for said note; and that it, in fact, was without any consideration. Judgment was demanded that it be canceled, and that the defendant *F. D. Taft* have judgment for $400 damages.

Plaintiff replied to the answer, denying that he made any representations to the defendant as to the age of the horse, and that it was nine years old or eight years old at the time of the sale, and alleged that the horse was then valuable for breeding purposes, and of the value of $700; that, if of little or no value for such purposes, it was by reason of said defendant *F. D. Taft's* having carelessly and negligently used, kept, and treated the horse; and it was alleged, in fact, that said *Taft* did ill treat and fail to properly care for and feed said horse, whereby it became and was sick, and unfitted for

Rood vs. Taft and another.

use as a stallion, and that any loss of time or expense of the said defendant that had occurred was occasioned by the means aforesaid. The plaintiff, further replying to said answer and the counterclaim therein contained, denied each and every allegation not admitted or specifically denied by said reply.

At the trial, before the court and a jury, evidence was given tending to sustain the claim in the answer that the plaintiff made the representations stated therein, and with knowledge of their falsity, and that the defendant relied on such representations; that the expenses and care expended by the defendant *F. D. Taft* in keeping the horse, and attempting to use him for breeding purposes during two seasons, were from $400 to $575; that the horse served thirty-six mares in 1891, and got only nine colts, and in 1892 thirty-five mares and got only five colts, for which services the defendant *F. D. Taft* received $140. The evidence given on the part of the plaintiff was that, up to the time of the sale, the horse was an excellent foal getter, and during five years had got colts on from fifty-five to seventy-five per cent. of the mares he had served in each year, and that such was a good percentage. The evidence upon the question of the condition and usefulness of the horse as a foal getter, and the manner in which he had been used and managed by the defendant, took quite a wide range. The court instructed the jury, among other things, in substance, that the defendants alleged that, at the time of the purchase, the plaintiff warranted the horse to be a good breeder and sure foal getter, and that it was only seven years of age; that, if such was the case, it would be what is called in law a warranty; that if they found that there was a warranty that the horse was a good breeder and sure foal getter, and that there was a breach of that warranty,— that is, that the horse was not a good breeder, that he was not a sure foal getter,— and they further found that

he was asserted to be only seven years old, when he was
nine, then the next step would be finding what the dam-
ages were; that the damages were the difference between
the value of the horse if he had been as represented and his
value with the defects mentioned; that such sum would be
the entire damages that naturally flow from the breach.
Exceptions were taken to these portions of the charge. The
jury found for the defendants, and assessed the damages
which *F. D. Taft* had sustained at $540. Upon argument
of a motion by the plaintiff for a new trial the defendant,
by leave of the court, remitted $140 damages, and judgment
was rendered in favor of the defendant *F. D. Taft*, against
the plaintiff, for $400 damages, and that the defendants re-
cover their costs, taxed, etc., from which the plaintiff ap-
pealed.

For the appellant there was a brief by *A. S. Douglas* and
*Orton & Osborn*, and oral argument by *P. A. Orton.*

*P. J. Clawson*, for the respondents.

PINNEY, J.  All that part of the answer which precedes
the portion denominated a counterclaim consists of defen-
sive matter only, and states no foundation for a recovery of
damages by the defendant *F. D. Taft* against the plaintiff,
but might suffice simply to defeat a recovery by the plaint-
iff on the note. It is very clear that the defensive matter
thus pleaded was in tort for the fraud and deceit in the sale
of the horse to the defendant *F. D. Taft*, and not a mere
warranty; but in either case no recovery could be had in
his favor against the plaintiff, unless such matter was pleaded
as a counterclaim. *Resch v. Senn*, 31 Wis. 138. The circuit
court erred, therefore, in submitting it to the jury to find,
as it did, a verdict in favor of the defendant *F. D. Taft*,
for damages against the plaintiff, and in submitting to the
jury for any purpose the question whether the plaintiff war-
ranted the horse, as the defensive matter was founded only

in tort, and for fraud and deceit in the sale of the horse. The rule was settled at an early day in this state that facts which may form the basis of a counterclaim will not, when set up in the answer, be regarded as such, unless pleaded as a counterclaim, and expressly so denominated, and affirmative relief is prayed. *Resch v. Senn, supra; Stowell v. Eldred,* 39 Wis. 615. In the latter case it was said by Lyon, J., that "it is so easy to commence a counterclaim by denominating it a counterclaim, and to close it with a demand for relief, that it is not unreasonable, and does no violence to the spirit of the Code, to require the pleader to do so." The rule of these decisions was carried into sec. 2656, R. S., requiring that each counterclaim "be pleaded as such, and be so denominated." The matter set up in that part of the answer denominated a counterclaim is wholly insufficient to warrant any recovery in favor of the defendant *F. D. Taft.* It does not contain any appropriate words of reference to the matters constituting the merely defensive portion of the answer, to make such matters a part of the alleged counterclaim; and the matters thus stated in such so-called counterclaims are not sufficient to constitute a cause of action *ex contractu* for a breach of the warranty, or in tort for fraud and deceit in the sale of the horse; and therefore it does not sustain the judgment for damages rendered against the plaintiff. The distinction between a cause of action in tort as for fraud and deceit stated defensively, and a cause of action *ex contractu* as for a breach of warranty, is clear, and is pointed out in *Anderson v. Case,* 28 Wis. 506–509. A case ought not to be submitted to the jury to find a cause of action *ex contractu* under allegations showing that the cause of action was founded in tort only, as the party against whom a recovery might thus be had would, in consequence of the state of the record, be exposed to be imprisoned upon an execution against his person. We do not think that the difficulty pointed out at the trial in respect to the answer of

the defendant was obviated or waived by the fact that the plaintiff replied to the answer and counterclaim. In any view that may properly be taken of the case, it was error to submit the case to the jury as one founded only on a breach of warranty on the sale of the horse. For these reasons, the judgment of the circuit court is erroneous, and it is not necessary to consider the other questions discussed at the argument.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.