MANNING, Respondent, vs. SCHOOL DISTRICT No. 6, OF FORT ATKINSON, Appellant.

*January 12—January 31, 1905.*

(1–4) *Pleading: Counterclaim: Construction: Reference to other portions of answer.* (5–8) *Evidence: Basis of opinion: Statements of employees: Memoranda.* (9–21) *Contracts: Substantial and partial performance: Measure of recovery: Work to be "satisfactory:" Acceptance:* Quantum meruit: *Instructions to jury.*

1. Failure by one to perform his contract with another entitling that other to a modification or extinguishment of the contract price may be pleaded as a defense or counterclaim.
2. In determining whether a complaint states a cause of action the question is not whether the pleader used the most appropriate

Manning v. School District No. 6, 124 Wis. 84.

language to that end, but whether the language used will permit reasonably of a construction sustaining the intent of the pleader in view of the rule that all facts necessary thereto not expressly alleged which can reasonably be inferred from what is stated are to be regarded as properly pleaded.

3. It being reasonably plain that the defendant intended to plead a counterclaim, matter stated in the answer outside that portion devoted specially to the counterclaim or stated in the complaint, if referred to for that purpose directly or circumstantially, is to be regarded as incorporated in the statement of the counterclaim.

4. In applying the last rule where the plaintiff indicates that he considers the facts necessary to the counterclaim not stated in that portion of the answer specifically devoted thereto as alleged by reference directly or circumstantially to other portions of the answer or to statements in the complaint by replying, that view should prevail unless the language of the counterclaim as a whole will clearly not reasonably admit thereof.

5. It is error to strike out opinion evidence of an expert at the close of a case on the side offering such evidence, upon the ground that the detail facts upon which it was based were not given, no effort having been made by cross-examination to elicit testimony in that regard, and especially is that so where no objection is made because of such want of detail.

6. Statements of an employee as to the character of his principal's work, not made while he is authorized to represent the principal in respect thereto, are not proper evidence against such principal.

7. The report of an expert to the one employing him, though communicated to the opposite party, is not admissible as evidence in favor of the employer.

8. If a person can testify to a matter by reference to a memorandum, made by him at or about the time of the occurrence and remembered by him to have been then known to be correctly made, he may do so, though at the time of testifying he cannot, by reference to the memorandum, recall such matter to mind so as to testify from present remembrance; and the memorandum itself may also be properly received as a part of his evidence.

9. It is error to instruct that the measure of the contractor's right to recover on a contract which he has in good faith substantially performed is the contract price.

10. If one only substantially performs his contract to improve another's property, the circumstances being such that it would be impracticable for such other to reject the incomplete work, that

one can, nevertheless, if his failure to fully perform is not characterized by bad faith, recover on the contract, but the measure of his recovery is the contract price less such deductions therefrom as will measure the difference between full and partial performance.

11. The right to recover on a contract for substantial performance does not involve any judicial modification of the contract to the prejudice of the proprietor. While he may be made to respond thereon for substantial performance he is entitled to such reduction from the contract price as will, in effect, render to him that full performance called for by the contract.

12. The rule for measuring the modification of the contract price so as to account for the difference between substantial and full performance is this: So far as the imperfections can be remedied without any great sacrifice of work and material wrought into the subject of the contract, the reasonable cost of actually making good such defects is to be allowed, and so far as it is otherwise the proper allowance is the diminished value of the subject of the contract by reason thereof.

13. When one contracts with another to perform a stipulated service for such other for a stipulated price, the sum to be paid when the work shall be satisfactorily done, such other is the one to be satisfied, and until the happening of that event, so long as he acts reasonably, the contract price is not collectible.

14. The rule which permits of a recovery on a contract for substantial performance thereof, without any other acceptance of the results than such as is unavoidable, does not apply to mere partial performance.

15. Where the property and labor of a person has been wrought into the property of another resulting in a good-faith part performance of a contract, but not substantial performance thereof, the circumstances being such that the former situation cannot practicably be restored, that other is not liable at all to the contractor merely because he is enriched to the latter's loss.

16. To make one liable on a contract under the circumstances stated in the last rule, there must be the additional element of acceptance of the work other than that appropriation and use thereof necessarily involved in the use of the property of which it forms a part.

17. If one sues on a contract, he cannot recover *quantum meruit* without an amendment to the complaint setting forth a cause of action of that character.

18. In case of mere part performance of a contract and such acceptance of the result as to entitle the contractor to recover *quantum meruit*, the measure of his recovery is the reasonable value of the part performance upon a *quantum meruit pro rata* basis,

i. e., on the basis of the value of full performance at the contract rate.

19. Where one of the issues to be determined by a jury is whether the plaintiff substantially performed his contract, they should be made to understand what constitutes such performance.

20. Substantial performance means full performance in all those essentials necessary to the accomplishment of the entire purpose of the contract. Failure as to any of such essentials, whether in good faith or bad faith, or any defect so essential as that the object which the parties intended to accomplish, to . have a specified amount of work performed in a particular manner, is not accomplished, is inconsistent with substantial performance.

21. That partial performance of a contract involving the incorporation of the labor and material of the contractor into the property of another so that the former situation cannot be restored, but failing to accomplish substantial performance, renders such other liable to the contractor to the amount of such other's enrichment to the contractor's loss, is not a part of our judicial system.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Jefferson county: B. F. DUNWIDDIE, Circuit Judge. *Reversed.*

Action to recover on a contract for installing a heating and ventilating plant in defendant's school building.

Plaintiff bound himself to remove the hot-air furnace in the building and place therein instead a steam boiler in working order of capacity sufficient, without waste of fuel, for a complete system of heating and ventilation for the building; to furnish and locate radiators to heat the building in connection with the ventilation to a temperature of seventy degrees during the coldest weather; to make such changes as to furnish fresh air tempered to seventy degrees to all rooms, and change the air therein at least three times an hour; to so locate the cold-air registers as to greatly improve the foul-air system of ventilation in use in the building; to furnish standard material, and to do the work in a neat and workmanlike manner, using such parts of the old heating and ventilating apparatus as could be advantageously incorporated in the

new plant, guarantying to leave the dry-closet system in use unimpaired, and to complete the whole by September 20, 1902. In consideration thereof defendant bound itself to pay plaintiff $500 upon the material for the work being delivered on the ground, $1,000 when the plant was completed, tested and found to do its work satisfactorily and in accordance with the contract, "the balance of $525 to be held by the school district board until there has been sufficient cold weather to see that the plant is satisfactory and will do the work" as agreed.

The complaint was appropriate to recover the final payment. Defendant answered, among other things, as follows: $1,500 was paid to the plaintiff, the last payment of $500 being with the express understanding that the right was reserved to determine, upon the weather being suitable for that purpose, by a proper test whether the plant was a success and in compliance with the contract. Subsequently, when there was such weather, it was demonstrated that the building could not be warmed according to the terms of the contract and that the plant was not satisfactory. The boiler proved to be too small; neither direct nor indirect radiators were sufficient; they were not of the proper size nor properly located; some of the pipes were too small and not properly arranged or covered; the distribution of heat was not such as to furnish the proper amount thereof to each room; the plant was not susceptible of being operated without waste of fuel; the ventilation of the building proved to be inadequate; the air in the rooms was not changed nor the foul air removed therefrom as agreed, and the dry-closet system was materially injured. All of these facts were pleaded as a defense, followed with this:

"Defendant further says that to make such heating plant adequate to heat such building and ventilate the same in accordance with said contract, will require a large expenditure of money, and defendant alleges on information and belief that the cost of so doing, in addition to the sum of $575 al-

ready reserved by the defendant, will amount to $500, and defendant pleads same as a counterclaim in this action."

Judgment was prayed for against the defendant for the sum of $500, with costs.

Plaintiff replied to the counterclaim, so called. The result of the trial was a verdict in plaintiff's favor for the full amount of his claim. Numerous exceptions to rulings of the trial court were preserved for review upon appeal to this court, which exceptions included all matters discussed in the opinion.

For the appellant there were briefs by *L. B. Caswell* and *Rogers & Rogers,* and oral argument by *W. H. Rogers* and *L. B. Caswell.*

For the respondent there was a brief by *Colin Wright* and *Burr W. Jones,* and oral argument by *Mr. Wright*

MARSHALL, J.   There is hardly room for argument but that the breaches of contract pleaded by appellant, if established by evidence, were sufficient to modify or entirely defeat respondent's claim, and perhaps call for a judgment against him.   Therefore, they were pleadable as a defense and a counterclaim as well.   *Heckman v. Swartz,* 55 Wis. 173, 12 N. W. 439; *Kaukauna E. L. Co. v. Kaukauna,* 114 Wis. 327, 343, 89 N. W. 542.   We shall assume the learned circuit judge appreciated that and grounded the decision that no counterclaim was stated, not upon the theory that facts sufficient to support one were not disclosed, but that they were not so stated as to comply with the statutory requisites on the subject.   It really makes no difference whether the breaches of contract were stated as a defense only, or as a defense and counterclaim, so far as reducing respondent's claim is concerned, if, as alleged, he did not substantially perform his contract.   In that event he could only, at best, recover the reasonable value of his work and material, on a proper basis, which were appropriated by appellant.   If he substantially

but not fully complied with his contract, he could only properly recover the contract price, less such deductions as would, under proper rules for measuring the damages caused thereby, make the same good to appellant,—and no counterclaim was necessary to secure such deductions, though a claim therefor was pleadable as one. In short, all the breaches of contract alleged in the answer to the extent of defeating respondent's claim were pleadable as defensive matters, and were also pleadable as a counterclaim compelling respondent to confess or deny the same, if appellant so desired.

Do those matters disclosed by the answer, which were pleadable as a counterclaim, constitute one under the circumstances? We apprehend the court decided that in the negative upon the theory that in the paragraph of the answer suggesting the subject of counterclaim no breaches of contract were alleged expressly or by reference to the preceding allegations where such breaches were set forth as defensive matters.

In seeking out what the pleader intended we must bear in mind that "in the construction of a pleading for the purpose of determining its effect its allegations shall be liberally construed, with a view to substantial justice between the parties." Sec. 2668, Stats. 1898. "Every reasonable intendment and presumption is to be made in favor of the pleading." *Morse v. Gilman,* 16 Wis. 504. No pleading is to be condemned for want of an allegation therein of any essential fact which one can discover the pleader claimed to exist and intended to state therein, if the same can be read therefrom by reasonable inference, "though its allegations be in form uncertain, incomplete, and defective." *Miller v. Bayer,* 94 Wis. 123, 68 N. W. 869; *Ean v. C., M. & St. P. R. Co.* 95 Wis. 69, 69 N. W. 997. For example, a complaint in a case to recover on contract is to be viewed as if it merely stated the making thereof, compliance therewith, and the amount due thereon, without any particulars. Contrary to the common-

law rule, it is to be construed most strongly in favor of instead of against a pleader in case of a formal demurrer thereto (*Morse v. Gilman, supra*), and if the objection be taken for insufficiency other than by such a demurrer, for the purpose of sustaining it, it is to be viewed with still greater liberality (*Hazleton v. Union Bank*, 32 Wis. 34; *Teetshorn v. Hull*, 30 Wis. 162).

Much has been said on the subject under discussion, particularly in recent years, to the end that the great change wrought by the Code in the manner of construing pleadings might be fully appreciated. For sufficiency of facts pleaded the Code looks to the substance, not to form. Its basic principle is that the administration of justice should not be embarrassed by technicalities, strict rules of construction, and useless forms. In harmony with that the proceedings mapped out for litigants to follow were by the architects of the Code made as simple and plain as practicable. Then they provided that every pleading shall be construed as sufficiently stating everything necessary to the cause of action or defense intended, which can be found alleged therein, expressly or inferentially, looking at the language thereof in its full reasonable scope; and it was further provided that all errors in proceedings, not prejudicial, shall be regarded as immaterial. Sec. 2829, Stats. 1898. This rule was deduced in *Kliefoth v. Northwestern I. Co.* 98 Wis. 495, 74 N. W. 356, from previous decisions on the subject:

"In determining whether a complaint states a cause of action the question is not whether the plaintiff used the most appropriate language in stating his case, but whether the language used will permit a construction which will sustain the pleading, and to that end such effect should be given to its allegations as will support rather than defeat it, if that can be done without adding, by way of construction, material words not necessarily implied, or giving to the language used a meaning that cannot be reasonably attributed to it."

It is not infrequently that mere indefiniteness in a pleading

.is challenged as insufficiency. The pleading may be indefinite and open to a motion on that ground, and yet its allegations be clearly susceptible of a reasonable construction sustaining it, constituting a complete answer to a general demurrer. *Miles v. Mut. R. F. L. Asso.* 108 Wis. 421, 427, 84 N. W. 159.

Now there can be no reasonable doubt but that appellant's counsel intended to plead the breaches of contract and consequences thereof stated in the defensive part of the answer as part of the statement of a counterclaim. This language is unmistakable: The cost of completing the plant, "in addition to the sum of five hundred and seventy-five dollars already reserved by the defendant, will amount to five hundred dollars, and defendant pleads the same as a counterclaim in this action; the defendant denies each and every allegation of plaintiff's complaint not hereinbefore admitted and prays judgment of this court for the said sum of five hundred dollars." True, the particulars as regards the departure from the contract were not stated in that part of the answer specially devoted to the counterclaim. But if they were necessary to be mentioned, to pass the test of sufficiency, they were all stated in detail prior thereto, followed by an allegation that they were pleaded as a defense, which was immediately followed by the language we have quoted commencing with the words "Defendant further says that to make such heating plant adequate," etc. The most formal way was for the pleader to state the breaches as a defense and then restate them as a part of the counterclaim. A good substitute for such a restatement is to refer to the prior allegations in a general way as to be deemed repeated as a part of the cause of action constituting the counterclaim. However, any reasonable indication that the breaches pleaded as a defense are intended to be also stated by way of counterclaim, under the liberal rules we have mentioned, would justify their being so regarded.

We are not unmindful of the statement in *Rood v. Taft,* 94 Wis. 380, 384, 69 N. W. 183, that without some appropriate words in that part of the answer devoted to the attempt to state a counterclaim, referring to the allegations in the defensive portion and making the same part of the statement constituting the counterclaim, they cannot be so treated. The court did not intend thereby to declare that an express reference in the counterclaim to such allegations incorporating them into the statement of the counterclaim is absolutely essential. Such a doctrine would invade the statutory rule for the construction of pleadings to which we have referred. There must be an appropriate reference, as said, but it need not be an express reference. If defensive allegations can be reasonably deemed restated as a part of the cause of action constituting the counterclaim, that is sufficient. We shall not undertake to analyze or justify what was said in *Rood v. Taft* with reference to the facts of that case. It is sufficient to say that the opinion should not be construed as holding that nothing short of words of express reference to defensive matters in the answer unmistakably incorporating the same into that part of the pleading devoted to the counterclaim will have that effect, irrespective of whether the plaintiff read the pleading as containing a counterclaim and replied thereto.

Here, as we have indicated, defendant alleged breaches of contract, following the same with an allegation that they were pleaded as a defense, following that by a paragraph denying all allegations of the complaint not theretofore admitted, and alleging that it would require expenditures to the amount of $1,075 to complete the contract, which, not only by reasonable but by necessary inference, referred to the departures from the contract before alleged. That was coupled with language to the effect that the situation rendering the expenditure of the sum mentioned necessary to complete the contract was pleaded as a counterclaim.

There is nothing in *Brauchle v. Nothhelfer,* 107 Wis. 457,

83 N. W. 653, inconsistent with the foregoing. In that case there was no allegation in the body of the complaint indicating a purpose to state a counterclaim.

In giving to a pleading, as a whole, the most favorable construction it will reasonably bear, to the end that the evident purpose of the pleader to state a counterclaim may not be defeated, some significance should be ascribed to the circumstance, when it exists, that all defects were waived by plaintiff, so far as it was competent for him to do so, by replying. Perhaps such circumstance was not given proper weight in *Rood v. Taft.* In *Irvin v. Smith,* 60 Wis. 172, 18 N. W. 722, facts not denominated as a counterclaim, but followed by a prayer for affirmative relief, regardless of the informalities, were held to contain one upon the plaintiff's indicating that he so viewed the pleadings by replying thereto, and waived the defect. In *Voechting v. Grau,* 55 Wis. 312, 13 N. W. 230, it was said that the purpose of the statute requiring facts, relied upon as a counterclaim, to be pleaded as such, is to enable the plaintiff to know to a reasonable certainty the pleader's intention; that the reason of the statutory rule fails when the plaintiff is so satisfied, though the formal requirement is not complied with, and he acts accordingly by replying. To the same effect is *Selleck v. Griswold,* 49 Wis. 39, 5 N. W. 213.

The use of the above citations must not be construed as holding that a pleading not containing facts constituting and intended to be stated as a counterclaim should be held to state one because so viewed by the plaintiff, as indicated by his replying thereto, or for any other cause. The act of replying simply waives all mere formalities and uncertainties. The counterclaim, the same as a complaint, must include in some way a statement of facts constituting a cause of action in favor of one party against the other. No fact which would be essential to a cause of action in a complaint can be properly omitted in stating the same cause in an answer, but the statement in the latter need not necessarily include a repetition of the

facts alleged as defensive matter or in the complaint. If they are referred to expressly, or inferentially, so as to make reasonably clear the purpose of the pleader to rely upon them as a part of the counterclaim, that satisfies the test of sufficiency. In short, the same rules apply to one pleading as to the other.

In *Cragin v. Lovell,* 88 N. Y. 258, the rule was laid down thus:

"A separate defense may contain all the requisite allegations within itself to make it a perfect counterclaim, or it may refer to papers annexed, or to other parts of the answer, or to the complaint, and the matters thus referred to are just as much a part of the counterclaim as if written at length therein."

That is very much the same rule as was stated in *Rood v. Taft,* 94 Wis. 380, 69 N. W. 183, but upon reading the opinion it will be seen that express reference to matters outside of that portion of the pleading devoted to the counterclaim but appearing in the pleading was not regarded as essential. The alleged defect in the counterclaim was in that it was not alleged that certain real estate was located in the state of Louisiana. The court referred to several circumstances as answering the objection, one being that it was alleged in the complaint that the land was located in Louisiana; that the answer drawn to meet that statement contained no denial thereof, which in effect admitted it and thereby incorporated the allegation in that regard into the answer. Other features of the pleading were mentioned as showing that the counterclaim, without any express mention of the fact, alleged that the realty was located in Louisiana.

Applying the foregoing to the case in hand, all matters necessary to the counterclaim not expressly stated in the paragraph devoted thereto, but otherwise appearing in the pleading, were, within the spirit of *Rood v. Taft, supra,* "by appropriate words of reference" incorporated into such counterclaim.

From the foregoing we may deduce this as a rule of plead-

ing: Matters once stated in a complaint or answer may be reasonably regarded as incorporated into that part of the answer apparently devoted to the statement of a counterclaim if referred to for that purpose, directly or circumstantially, and when the plaintiff by replying indicates that he considers them so incorporated, that view should prevail, unless the language of the counterclaim as a whole very clearly will not admit thereof.

The evidence of a witness who fully qualified himself to testify as an expert regarding the expenditure required to make the heating and ventilating plant comply with the contract was received, and at the close of the testimony was stricken out because the witness failed to state in detail the particulars of the work which would necessitate such expenditure. The theory of respondent's counsel was that the evidence was incompetent because no foundation was laid therefor in the answer and the motion ruled on was made on that ground. That was untenable, as we have seen, since a counterclaim was sufficiently pleaded. The cost of making good the departure from the requirements of the contract to the extent of defeating plaintiff's claim, was proper in any event, and the facts in that regard were pleaded as a defense. If, when the evidence of the expert was offered, upon a proper objection being made, the court in the exercise of its discretion had excluded it until the witness first stated the particulars upon which he based his conclusion, the ruling might pass without much criticism, but to receive the evidence and then strike it out, as was done at the close of defendant's case, because upon the examination in chief the basic details were not given, although there was full unimproved opportunity afforded respondent on cross-examination to go into that subject, especially when no objection was made on that ground, is plainly error.

A witness was interrogated as to circumstances leading up to the contract, and the evidence in that regard was excluded.

No reason is given why it was material, and we are unable to perceive any.

Complaint is made because a statement by an employee of respondent, who was present some of the time when the plant was being tested, as to whether it was then acting efficiently, was not permitted to be given in evidence. We assume the ruling was based on the theory that there was no satisfactory showing that the employee was authorized to represent respondent for the purpose of testing the capacity of the plant. We see no good reason for overruling the trial court on the question of competency involved.

Written reports made by the expert employed by appellant to examine the plant as regards whether it satisfied the contract, and which were sent to the respondent, when offered in evidence by appellant, were excluded. That ruling must be approved. Such reports were mere declarations in the interest of appellant made out of court. At best they were mere hearsay.

A witness who kept a diary in which he noted down from day to day the state of the weather and was able thereby to testify positively as to the temperature at a time material to the case, but could not do so other than in connection with his knowledge that when he made the memorandum he recorded the truth of the matter, was not permitted to testify on the subject upon the theory that the governing rule is to the effect that a person cannot testify by the aid of a memorandum, unless after referring thereto he can recall to mind the fact and testify from present remembrance. This court has held otherwise on many occasions, in harmony with most if not all elementary authorities on the subject. *Hill v. State,* 17 Wis. 675, 679; *Schettler v. Jones,* 20 Wis. 417; *Riggs v. Weise,* 24 Wis. 545; *Stubbings v. Dockery,* 80 Wis. 618, 50 N. W. 775; *Bourda v. Jones,* 110 Wis. 52, 85 N. W. 671; *Nehrling v. Herold Co.* 112 Wis. 558, 88 N. W. 614; 1 Greenl. Evidence, § 437; Phillips, Evidence (3d ed.) § 411;

3 Jones, Evidence, §§ 877–886. In *Schettler v. Jones, supra,* the court, speaking by DIXON, C. J., said:

"We think the sounder and better rule to be, that if the witness can swear positively that the memoranda or entries were made according to the truth of the facts, and consequently that the facts did exist, that is sufficient, though they may not remain in his memory at the time he gives his testimony. He may testify from the entries, and when he does so he swears positively to the truth of the facts stated in them."

True, the rule thus stated was not at the time of its declaration extended to a mere private memorandum, but there is no good reason for not so extending it, where the competency of the witness is clearly established by his positive testimony as to present recollection that when he made the memorandum it was in accordance with the truth as he then knew the fact to be, and so it was held in *Bourda v. Jones, supra.* The rule was there broadly stated thus:

"A witness, in testifying, may properly use a memorandum which he knew when made, or by subsequent verification thereof, to be correct, even though he does not possess present remembrance of the correctness of the matters referred to therein, after seeing the paper and examining it."

Quite as broad language as that forms the text in 3 Jones, Evidence, at § 884. This is the language used there:

"It is now well settled that a memorandum or writing may be used by the witness, not only when he can swear from actual recollection, but in some cases where the witness, after referring to such writing, can swear to a fact, not because he remembered it, but because of his *confidence in the correctness of the writing.*"

And again at § 886, as regards the use of a memorandum as an independent instrument of evidence:

"Although it is clear that the document is not admissible as evidence when it so recalls the facts to the mind of the witness that he remembers them and can testify from his act-

ual recollection, it has frequently been held that *another rule prevails when the witness,* after examining the memorandum, *cannot testify to an existing knowledge of the fact, independently of the memorandum, but can testify that,* at or about the time the writing was made, *he knew of its contents and of their truth* or accuracy."

✓Complaint is made because the court not only refused to permit the witness to testify by the aid of his memorandum, known by him to have been correctly made, since he had no present recollection of the facts after examining the paper, but refused to permit the paper to be introduced in evidence. The judicial idea was that the only permissible use of a memorandum is to refresh the memory of the witness. Respondent's counsel suggested to the court that the inquiry should be restricted substantially to this: "Do you remember after looking at the memorandum," etc.? That is clearly wrong, as we have seen. Not only was it permissible for the witness to testify from the memorandum when the only remembrance he had on the subject was that it was correctly made, but it was proper to receive the memorandum in evidence as part of the witness's testimony. *Bourda v. Jones,* 110 Wis. 52, 85 N. W. 671; *Nehrling v. Herold Co.* 112 Wis. 558, 88 N. W. 614. Some authorities go further, holding that in such circumstances as before suggested the memorandum may be used as an independent evidentiary instrument. *Insurance Companies v. Weides,* 14 Wall. 375; *Kent v. Mason,* 1 Ill. App. 466. This court has adopted what may be called the middle course, the one supported, as it is believed, by the great weight of authority. Mr. Jones in his work on Evidence at § 886, speaking on the subject, says: "In such cases, both the testimony of the witness and the contents of the memoranda are held admissible. 'The two are the equivalent of a present positive statement of the witness, affirming the truth of the contents of the memorandum.' " ✓That language was fully indorsed in *Nehrling v. Herold Co., supra:*

"The rule is that a witness may refresh his recollection from a memorandum made by himself or by others, if he saw the memorandum while the facts were still fresh in his memory, and if he then knew it to be correct. In such case, if the witness cannot state the facts readily from personal recollection after using the memorandum, but can state that he knows the paper was correct when made, the paper itself may be put in evidence, and the statement of the witness and the contents of the paper together are equivalent to the present positive statement of the witness affirming the truth of the facts stated in the memorandum."

Further complaint is made because the court refused to permit proof of the reply of one of the teachers employed in the building to plaintiff's inquiry as regards the temperature in her room when he claimed he was engaged in testing the plant. The conversation between plaintiff and the teacher, so far as testified to, was drawn out on cross-examination of plaintiff. The reply of the teacher was excluded because the conversation was not a proper subject for cross-examination. On that ground, if on no other, the ruling was correct.

The court instructed the jury that if plaintiff substantially complied with the contract he was entitled to recover of defendant the balance unpaid thereon. That is not the law. The proper rule is stated in *Ashland L., S. & C. Co. v. Shores,* 105 Wis. 122, 81 N. W. 136, in effect, thus: When a contract has not been fully, but has been substantially, performed, in that it has been in good faith complied with in all essentials to the full accomplishment of that which was contracted for (*Manitowoc S. B. Works v. Manitowoc G. Co.* 120 Wis. 1, 97 N. W. 515), and the contract labor and material wrought into the property of the proprietor has been appropriated to the use intended, such contractor is entitled to recover the contract price, less such deductions therefrom as will make good to the proprietor the imperfections in the work. Such equivalent for the imperfections and the substantially completed work are regarded as affording the proprietor the full

performance of the contract to which he is entitled. So far as the imperfections can be remedied without any great sacrifice of work and material wrought into the subject of the contract and the proprietor's property, the contract price is to be reduced by so much as will measure the reasonable cost of applying such remedy, and otherwise the contract price is to be rebated to the extent of the diminished value of the subject of the contract by reason of the defects. The learned court's idea that substantial performance calls for the full contract price is entirely wrong. One who contracts with another for the erection of any structure or the installation of a plant of any kind for a stipulated price is entitled to the full benefit thereof in consideration of rendering the full price therefor. If he only receives substantial performance, he is, of course, upon proper proof entitled to such rebate from the agreed price as will constitute a fair equivalent for the difference between such and full performance of the agreement, and in an action for such price the damages mentioned are properly pleadable, either as a matter of defense or as a counterclaim. The very idea suggested by the term "substantial performance" is that the contractor has delivered something less than what he agreed to, and that the full consideration for the full price, according to the terms of the contract, being due to the proprietor as a matter of right, the courts must accord him a remedy which, in some form, will secure to him that right.

Error is assigned because the court refused to instruct the jury, at the request of appellant's counsel, as follows:

"Before the plaintiff can maintain his suit to recover this $575, the school board must be satisfied that the plant, put in by the plaintiff, is sufficient to warm the building in all its parts, in the coldest weather, to a temperature of seventy degrees,—this to be done in connection with ventilation that would also change the air in all parts of the building at least three times an hour.

"The school board would not be justified in a capricious de-

nial of its satisfaction, or in making such claim in bad faith, but the board, acting in good faith, had a right under this contract to withhold this money until they were satisfied that the plant would do the work which the plaintiff had agreed it should do. Now if you find they were not satisfied of this, the plaintiff cannot recover in this action."

The request was based on the circumstance that the third payment was payable when the plant was completed, tested, and made to work satisfactorily, and the last payment was not to be payable until the weather was sufficiently cold to demonstrate that the plant was capable of doing the work it was guarantied to do. The learned court seems to construe the word "satisfactorily" as meaning that the plant should, as matter of fact, answer the requirements of the contract in a physical sense and do the work agreed upon. Appellant's counsel contend the meaning to be that the plant should work satisfactorily to the purchaser, and insist that so long as the members of the board, acting reasonably, were not satisfied, the prime essential to the last payment being collectible was wanting. It seems to us the latter construction is the correct one. In *Parr v. Northern E. Mfg. Co.* 117 Wis. 278, 93 N. W. 1099, where a similar situation was dealt with, this court so held. There the language considered was this: "The die to be subject to our approval and not to be accepted unless it operates satisfactorily." The court said in respect thereto:

"The only meaning which can be logically attributed to this contract is that the machine was to operate satisfactorily to the defendant. . . . The respondents seem to claim that, if they could prove by the preponderance of the evidence that the machine in fact did good work, the contract has been fulfilled. This is not the law in this state. When such a contract is made, the article must be, in fact, satisfactory to the purchaser, or he is not bound to take it. . . . His dissatisfaction . . . must be real and in good faith."

It may have been thought by the learned court by reading that case that the language of the contract classed it with

those providing expressly that the subject of the sale shall be satisfactory to the purchaser; that such feature distinguished the case from this and was the controlling one. Such is not, however, the case. The court regarded the words "unless it operates satisfactorily" by themselves, as meaning, by necessary implication, satisfactory to the purchaser. That is quite plainly indicated by the language of the opinion, notwithstanding cases referred to, where the words "satisfactory to the purchaser" were used in the contract, since the case was largely grounded on this language in 1 Mechem, Sales, § 664, and supporting authorities, which were brought to the attention of the court:

"In many cases it is expressly stipulated that the sale shall not result unless the buyer is satisfied; but this express stipulation is not necessary. Where a proposition of sale is made to a person upon the condition that he need not purchase unless the article is satisfactory, the necessary inference, even in the absence of an express statement, is that he need not buy unless the article is satisfactory to him."

The following authorities support the text: *Singerly v. Thayer,* 108 Pa. St. 291, 2 Atl. 230; *U. S. Electric F. A. Co. v. Big Rapids,* 78 Mich. 67, 43 N. W. 1030; *Adams R. & B. Works v. Schnader,* 155 Pa. St. 394, 26 Atl. 745; *Brown v. Foster,* 113 Mass. 136. In *Singerly v. Thayer, supra,* the court said:

"He, therefore, was the person to decide and declare whether it was satisfactory. He did not agree to accept what would be satisfactory to others, but what was satisfactory to himself. This was the fact which the contract gave him the right to decide. . . . He was the person who was to test it and to use it. No other persons could intelligently determine whether in every respect he was satisfied therewith."

That applies very aptly to the case in hand. The agreement, in effect, was that the proper officers of the appellant should determine the question whether the apparatus was or was not satisfactory to it in view of the clause of the contract

that it should do the work satisfactorily, as regards heating and ventilation, as specified. The court ignored that very valuable feature of the contract and submitted to the jury the question which the parties agreed should be decided by appellant's officers.

There are authorities which support a different construction of such contracts as the one before us, as will readily be seen by an examination of those cited in the note to the text in Mechem which we have quoted. It seems, however, that the view taken by this court is the correct one. The natural inference from language in a sale contract stipulating that the subject thereof shall be of a specified character and be accepted and paid for only upon its proving satisfactory, is that the person to be satisfied is the purchaser; that the words "to the purchaser" or some equivalent words after the word "satisfactory" are to be regarded as a part of the contract by reasonable if not necessary implication.

Complaint is made because the court instructed the jury, in effect, that if respondent did not satisfactorily complete the contract he was yet entitled to recover the actual value of the plant as he installed it at the time of the installation thereof, less payments made by appellant. The instruction is erroneous on several grounds:

(a) There being no basis in the complaint for a recovery *quantum meruit,* none was proper without an amendment thereto. *Trowbridge v. Barrett,* 30 Wis. 661; *Thomas v. Hatch,* 53 Wis. 296, 10 N. W. 393; *Manitowoc S. B. Works v. Manitowoc G. Co.* 120 Wis. 1, 97 N. W. 515.

(b) There was no proper evidence of the reasonable value of the plant on the basis of the contract rate, supporting a claim for recovery *quantum meruit.* So there was but one course to pursue and that was to dismiss the complaint. *Manitowoc S. B. Works v. Manitowoc G. Co., supra.*

(c) In case the complaint and evidence were sufficient to support a recovery *quantum meruit,* it was error to instruct

the jury that the measure thereof was the actual value of the plant, less payments made. Such a rule, as counsel for appellant well contend, would permit the jury, upon competent evidence of the facts, to compel a purchaser to pay more for an inferior article than the contract price for a good one. The proper measure of recovery in such circumstances, as we have indicated, is the reasonable value at the contract rate, not exceeding the contract price, less payments made. *Manitowoc S. B. Works v. Manitowoc G. Co., supra; Bishop v. Price,* 24 Wis. 480; *Walsh v. Fisher,* 102 Wis. 172, 78 N. W. 437. In two of the cases cited this court quoted, with approval, from *Allen v. McKibbin,* 5 Mich. 449, 455, as a clear explanation of the foundation principle governing such situations, this language:

"A party in default can never gain by his default, and the other party can never be permitted to lose by it; and the price thus determined is the true basis of recovery on a *quantum meruit.*"

In 3 Sutherland, Damages (3d ed.) § 711, the subject is treated at length, this language being used:

"Hence the amount which may be recovered is the amount by which, were no payments made, the defendant would profit at the plaintiff's expense; that is to say, the amount which represented the fair market value of the structure which, against the wishes of the defendant, has been put upon his land. This value the plaintiff must prove before he can recover. If the contract is a beneficial one to the landowner the contractor is not entitled to recover any margin of the benefit which the former secured by the making of the contract; but the contractor is entitled to the value of the building as it is in the light of the landowner's right to have the building built, and properly built, for the contract price."

(d) The contract being entire the respondent was not, in any event, entitled to recover *quantum meruit* for mere partial performance, as a matter of course. In such a case, in the nature of things, there is no opportunity to accept or re-

ject the defective work by merely keeping it or returning it. It is incorporated into the proprietor's property in such a way as to render him substantially powerless to do otherwise than to accept whatever is delivered. In such circumstances, notwithstanding mere part performance by the contractor in good faith and some enrichment of the proprietor at the contractor's expense, under the rule prevailing in this jurisdiction there can be no recovery at all without proof of acceptance other than such as is inferable from the mere fact that the improvement is retained and used. *Manitowoc S. B. Works v. Manitowoc G. Co.* 120 Wis. 1, 97 N. W. 515; *Fuller-Warren Co. v. Shurts,* 95 Wis. 606, 70 N. W. 683; *Williams v. Thrall,* 101 Wis. 337, 76 N. W. 509; *Sherry v. Madler,* 123 Wis. 621, 101 N. W. 1095. The evidence in this case certainly did not show, as a matter of law, any election to take the plant irrespective of whether it was defective or not. So the instruction wholly ignoring that subject, or assuming there was an acceptance because appellant did what it could not reasonably avoid doing, indicates that the learned court followed authorities in other jurisdictions than our own, of which it must be confessed there are many, and respectable ones too.

The only assignment of error remaining not sufficiently covered by those already discussed is that the verdict is contrary to the law and evidence. It is manifestly contrary to the law, as we have seen, mainly because the law was not correctly given to the jury. It was also contrary to the evidence in view of the law as it should have been given to them, as we have also seen. The evidence that appellant, acting in good faith through its officers, was dissatisfied with the plant seems conclusive. There was no evidence to warrant a recovery *quantum meruit.* If the jury found that the contract was substantially performed, which is left in much doubt by the way the case was submitted, we are inclined to agree with appellant's counsel that the verdict is contrary to the evi-

dence on that point. We are unable to find any satisfactory evidence in the record that the capacity of the plant to warm the building to a temperature of seventy degrees in the coldest weather was established. The test relied upon was made when, at the best for respondent, the temperature was but a few degrees below zero,—not the coldest weather by any means liable to occur in the climate of southern Wisconsin, as abundantly appears from the evidence, and which we may well say is a matter of common knowledge.

Other points bearing on the question of whether there was substantial performance of the contract, such as that the air in the rooms should be changed three times per hour, the foul-air system and the ventilation of the building should be improved and the dry-closet system should not be impaired, we shall not refer to in detail. It is sufficient to say that if the jury had, on the evidence, found against appellant on the question of substantial performance, laying aside its right to pass on the response to the contract as to the working capacity of the plant and such response in fact, and the trial court, with appreciation of the legal limitations of that term, refused to set the findings aside, the verdict could not properly be disturbed, even if it be true, as claimed, that the evidence greatly preponderates against such finding. The agreement as to the performance of the plant when in operation in the coldest weather was the principal matter. Without some reasonable showing for respondent on that point, there is no foundation for a verdict of substantial performance. We are inclined to hold that such evidence does not appear in the record. Possibly, if it were clear that the jury, under proper instructions, found for respondent in respect thereto, and the trial court in ruling on the motion had that in mind, the verdict could not be disturbed. But the jury were not furnished any guide whatever as to what constitutes "substantial performance." The case was given into their hands for consideration in such a way that they might have reached this con-

clusion and yet believe there was no such performance. The situation of the case is such, in any view that can be taken of it, that it must be retried. Therefore it is not thought best to analyze the evidence carefully as to whether it would sustain a finding favorable to respondent, though, as indicated, we are not entirely clear on the point.

The learned court, though using the term "substantial performance" many times in the instructions as to each particular feature of the agreement, yet singularly, as we have said, failed entirely to enlighten the jury as to what was meant thereby. That is a very unsafe way to submit a case. It is very liable to result in the jury not passing upon the vital point at issue. The term "substantial performance" is by no means without limitation of a legal nature. The rule allowing a recovery on a contract for such performance is equitable in its nature. It is really a judicial invasion of strict contract right out of regard for the contractor who would otherwise, without bad faith, but through mere inadvertence, suffer great or substantial loss, and the proprietor be correspondingly enriched, perhaps obtaining for all practical purposes just what he contracted for. Being a relaxation which modifies the contract without the proprietor's consent, much care should be taken not to permit its abuse to the latter's prejudice, who is entitled, in strict right, to just what he contracted for and in the form agreed upon. To that end the jury should not be left to apply the rule without any guide. They should be instructed that "substantial performance" means strict performance in all essentials necessary to the full accomplishment of the purposes for which the thing contracted for was designed. Failure as to any of such features, whether in good faith or bad faith, any departure from the contract, not caused by inadvertence, or unavoidable omission, any defect so essential "as that the object which the parties intended to accomplish to have a specified amount of work performed in a particular manner is not accomplished,"

is inconsistent with substantial performance of the contract. *Manitowoc S. B. Works v. Manitowoc G. Co.* 120 Wis. 1, 97 N. W. 515; *Woodward v. Fuller,* 80 N. Y. 312; *Phillip v. Gallant,* 62 N. Y. 256. Care should be exercised also to distinguish between that "substantial performance" enabling the contractor to recover upon the contract, and that other such compliance spoken of in the books, furnishing a basis for relief regardless of the attitude of the proprietor as regards acceptance of the work, so long as he in fact, though unavoidably, has the benefit of what is done. The doctrine that a recovery can be had grounded upon the latter species of substantial performance prevails in many, and perhaps most, jurisdictions at this day. 3 Sutherland, Damages, § 711. It was adopted in Massachusetts as early as 1828 (*Hayward v. Leonard,* 7 Pick. 181), and has been there since firmly adhered to, as the numerous cases found cited in the text in Sutherland show. Authorities in other states that have adopted the same rule are there referred to in connection with the statement that the weight of modern authority is in harmony therewith. However, in this state if there were at any one period, as shown by the decided cases, some tendency in the same direction, it will be found that for a long period reaching up to the present time the adjudications have been in harmony to the contrary, the most recent cases being *Manitowoc S. B. Works v. Manitowoc G. Co., supra,* and *Sherry v. Madler,* 123 Wis. 621, 101 N. W. 1095.

Great caution should also be exercised, in submitting a case like this to a jury for a finding *quantum meruit,* to keep in mind, first, to authorize such a recovery the pleading, either originally or by amendment, should furnish a legitimate basis therefor; second, there must be acceptance, as before indicated, other than by doing what is unavoidable; third, the rate of recovery is not the reasonable or actual value in a general sense, but the reasonable value on the basis of the contract rate. If, for instance, a contract calls for a

structure at a price which is but fifty per cent. of the reasonable value thereof, and the contractor fails to even substantially perform, but the circumstances are such that he is entitled to a recovery *quantum meruit,* the measure thereof is *quantum meruit pro rata,* or fifty per cent. of the reasonable value of the structure in a general sense, that being the reasonable value to the proprietor under the circumstances, which is all he can be equitably required to pay.

Recapitulating, the important points to be observed on a retrial of this case are:

1. No recovery can be had on a contract, in any event, in the absence of satisfactory proof of at least *"substantial performance,"* as that term has been explained, or a waiver thereof.

2. No recovery can be had on the contract, if the defendant, acting in good faith, was not satisfied with the plant.

3. No recovery can be had for mere substantial performance, except subject to such deductions from the contract price as will make appellant good for the difference between substantial and full performance.

4. No recovery can properly be had *quantum meruit* without a basis in the pleading therefor, and without proof of actual acceptance of the work.

5. If the work was accepted so that a recovery *quantum meruit* is permissible, the amount thereof must not be on the basis of the actual value, or the reasonable value in the ordinary sense, but on the basis of the reasonable value to the appellant in view of the contract, as before indicated.

*By the Court.*—The judgment is reversed, and the cause remanded for a new trial.