MUELLER, Appellant, vs. BURTON and another, Respondents.

*March 11—May 11, 1909.*

*Building contracts: Incomplete performance: Necessity of showing value on substantial performance.*

Where substantial performance of a contract to furnish and install a boiler for heating according to specifications is shown, the contractor seeking to recover need not produce evidence tending to show the reasonable value of the boiler installed. TIMLIN and BARNES, JJ., dissent.

*Per* WINSLOW, C. J., *concurring:* Substantial performance means strict performance in all essentials necessary to the full accomplishment of the purposes for which the thing contracted for was designed.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Reversed.*

For the appellant there was a brief by *Richmond, Jackman & Swansen,* and oral argument by *S. T. Swansen.*

*Wm. R. Bagley,* for the respondents.

TIMLIN, J.    The appellant brought an action against the respondents to recover upon express contract of the tenor and effect following:

*"Mrs. L. B. Burton, Madison, Wis.*

"DEAR MADAM: We propose to furnish a 48″ Dia. by 12 ft. long Horizontal Tubular Boiler built in conformity with the attached specifications.    This boiler to be installed and connected with the present pipe work and be inclosed in a suitable brick setting of common brick wall to be of proper size to suit the conditions which surround this installation due to the limited space allowed for same, all walls directly exposed to the fire to be lined four-inch lining of fire brick.

The present old 25 H. P. boiler to be removed, and a 48″ by 12 ft. to take its place, new breeching to be furnished and erected.   The entire work complete for the sum of eleven hundred fifty dollars ($1,150).

"Yours very truly,

"THE MUELLER Co.,

"per H. Toussaint, Mgr."

The specifications referred to contain the following:

"Thickness: The thickness of boiler shell sheets will be 9-32 of an inch, boiler heads 7-16 of an inch.   Dome shell sheets 5-16 of an inch, dome head 3-8 of an inch. . . . Have the dome opening for the water column tap 1¼ in the front head not on the side.   Boiler to be built for a working pressure of 100 pounds."

This offer was accepted in writing on October 9, 1907. The court found that the plaintiff installed the boiler under this contract, but the boiler did not comply with the specifications, in that the shell sheets were not 9-32 of an inch in thickness; the side sheets in the smoke box were from .241 to .246 of an inch thick, while such sheets above the dome opening were from .253 to .256 of an inch thick.  The boiler so installed has a working capacity of from ten to twenty pounds steam less than the one required by the contract, its bursting point is from forty to eighty pounds lower than that specified, and it is not in substantial compliance with the requirements of the contract.   The boiler was installed in the Capital House during December and January.   Defendants had no other boiler in this hotel of sufficient capacity to supply the steam necessary to operate the hotel and were of necessity obliged to use the boiler after it was installed.   Discovering that the boiler did not comply with the specifications, they notified the plaintiff, who promised to make the boiler right if it did not so comply.   Frequent conferences and negotiations were had, and while these were in progress, on demand of the plaintiff, the defendants made partial payments on the contract amounting in all to $600, in reliance upon the promise of the plaintiff to make the boiler comply with the specifications; but the

defendants never accepted the boiler, nor did they rescind the contract or tender back to the plaintiff the boiler.

No testimony was offered by either the plaintiff or defendants from which the court could compute any abatement from the contract price of the boiler, the plaintiff standing upon a claim to recover the whole contract price, and the defendants standing upon a claim to defeat recovery of this contract price because there was no performance. The plaintiff assumed the affirmative and offered evidence of measurements of the thickness of the boiler shell by means of a micrometer, as follows: At the edge of the plate to the smoke-box extension, four measurements finding the plates or shells near the edge and in this smoke box .241, .246, .246, and .243 of an inch, respectively. In the same way at the dome five measurements were taken, as follows: .260, .261, .255, .256, and .253 of an inch, respectively. The boiler was then complete and the micrometer could only be used on projecting edges. The thickness required by the specifications expressed in decimals of an inch, for more convenient comparison, was: Shell sheets .281 plus; heads .437 plus; and dome .312 plus. It was left to inference and argument whether or not the thickness of the plates near their edges and in the smoke box might be assumed to be the thickness of the shell plates forming the body of the boiler. There was no evidence of the thickness of the boiler-head plates, and the dome plates varied as above indicated from the specifications.

Expert evidence was received relative to the lower efficiency and bursting strength of the boiler as constructed, and also that the boiler would cost annually a larger sum for boiler insurance than it would cost if constructed according to the specifications, that it was constructed fit for a working pressure of 100 pounds as required by the specifications, and that it was of sufficient capacity to meet the present needs of the purchasers, although not to meet future anticipated enlargements or requirements, with a view to which the boiler was

purchased.   There was contradictory evidence, but not as to measurements or extra cost of insurance.   There was evidence tending to show, and a finding of the court to the effect, that the specification relating to 100 pounds pressure was added without authority of defendants after the execution of the contract.   There is testimony that the difference in market value of the sheets of the thickness shown by the measurements and those shown by the specifications is about $3 a sheet, but there is no evidence to show how many sheets are used up in making the boiler.

Upon the facts proven a majority of this court are of opinion that there was substantial performance shown, and that the findings of the court to the contrary are against the great weight of the evidence, and also that the contractor seeking to recover need not produce evidence tending to show the reasonable value of his incomplete but substantial performance. The writer does not share that belief, but is inclined to the view that the findings are supported by evidence, and that this court has carried the rule relative to substantial performance in this case too far, so as to seriously embarrass persons in the making of contracts and in protecting themselves against petty overreaching by contractors, and that, following the New York cases, it has gone beyond them in imposing upon the party resisting payment for lack of performance the onus of proving how much the concededly imperfect performance was worth to him.   See *Manning v. School Dist.* 124 Wis. 84, 100, 102 N. W. 356; *Manitowoc S. B. Works v. Manitowoc G. Co.* 120 Wis. 1, 97 N. W. 515.

In *Spence v. Ham,* 163 N. Y. 220, 57 N. E. 412, it is said that when the plaintiff "shows that he performed his contract, except that through inadvertence he omitted to do some unsubstantial things, he is not entitled to recover anything until he shows that the things omitted, if worthy of any attention whatever, can be supplied for a comparatively small sum, in which event he can recover the contract price after deducting

that sum." Until expounded by the present decision, I understood *Manning v. School Dist., supra,* to lay down the same rule.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded with directions to enter judgment for the appellant.

BARNES, J., dissents.

The following opinion was filed June 3, 1909:

WINSLOW, C. J. (*concurring*). Accepting as conclusive the finding of the trial judge to the effect that the contract, when executed, did not contain the words "boiler to be built for a working pressure of 100 pounds," there is really little dispute in the facts.

The respondents desired a new boiler to take the place of one that had been disabled, and contracted with the plaintiff to furnish and install the same, with the specification that the thickness of the boiler plates was to be 9-32 of an inch. The plaintiff contracted with a reputable manufacturer for the making of the boiler, who in turn purchased the necessary sheets of steel from reputable makers of boiler plate. The plate furnished was marked as 9-32 of an inch in thickness, and the boiler was made with the idea on the part of all concerned that the sheets were of the required thickness. Acting under this belief, the boiler was installed and partially paid for. It was afterwards found, however, that the boiler plates were only a trifle over 8-32 of an inch in thickness. The actual difference in thickness in those parts of the boiler subjected to steam strain was 28-1000 of an inch. This boiler would carry a working pressure of 109 pounds and a bursting pressure of 436 pounds, while a boiler with a 9-32 inch shell would carry a working pressure of 118 or 120 pounds and a bursting pressure of 472 to 480 pounds. The boiler in

question was tested by submitting it to a hydrostatic pressure of 150 pounds and found perfect. It will last just as long as the other. It costs just as much to manufacture, except that there would be about $3 difference in the cost of necessary plate. It was to run in connection with another boiler, and was required to carry but from 80 to 100 pounds of steam in order to furnish all the steam ever required by the defendants in their business. I find no evidence that any extension or enlargement of the defendants' business was anticipated when the boiler was bought. Certainly no such intention was communicated to the plaintiff.

Under these circumstances I agree that there was a substantial performance of the contract. There was a good-faith attempt to furnish the exact boiler contracted for. Without fault on plaintiff's part the shell was 28-1000 of an inch thinner than the contract called for, but the boiler answered every purpose for which it was purchased, was just as durable, and the difference in value was only nominal. "Substantial performance means strict performance in all essentials necessary to the full accomplishment of the purposes for which the thing contracted for was designed." *Manning v. School Dist.* 124 Wis. 84, 102 N. W. 356. It seems to me that there was just that situation here without dispute, and hence the plaintiff was entitled to judgment.