LISTMAN MILL COMPANY, Appellant, vs. AVERY SCALE COMPANY and another, Respondents.

*January 13—January 31, 1911.*

*Sale: Warranty: Breach: Evidence.*

Where an automatic grain scale was sold under a guaranty that it would weigh accurately within one eighth of one per cent., evidence of numerous tests showing discrepancies averaging slightly greater than said percentage, but so uniform as to indicate lack of adjustment rather than inaccuracy, is *held*, especially in view of the conditions surrounding the tests, not to show a failure to fulfil the contract requirement.

APPEAL from a judgment of the circuit court for La Crosse county: E. C. HIGBEE, Circuit Judge. *Affirmed.*

This is an action against the principal and surety upon an indemnity bond. Judgment of nonsuit was entered at the close of plaintiff's evidence and it appeals from that judg-

ment.   The evidence showed that plaintiff is a domestic corporation operating a flouring mill at La Crosse, the defendant *Avery Scale Company* a domestic corporation which manufactures automatic scales at North Milwaukee, and the defendant *American Bonding Company* a foreign corporation doing a suretyship business in this state; that in November, 1907, the defendant scale company sold to the *Listman Company* by written contract an automatic scale with a capacity of twenty bushels per discharge, and agreed to erect and install the same in plaintiff's mill for the sum of $650; that the contract further provided that the scales should work satisfactorily, and that if they failed to weigh within one eighth of one per cent. on clean wheat, after the scale company had been given reasonable opportunity to remedy the difficulty, they would be taken back and the purchase money refunded; that the bond in suit was given at the same time, conditioned to comply with all the terms of the contract; that the scale was installed about January 12, 1908; that some difficulties and defects were claimed by the plaintiff to exist in its operation and that the scale company sent men at various times to remedy the same; that in March, 1908, the plaintiff began making daily tests of the operation of the scale and continued the same until about August 1st following; that in September following the plaintiff took out the scale, claiming that it did not fulfil the contract, and informed the scale company that it was subject to its order.   It further appeared without dispute that the plaintiff had paid the purchase price of $650 some sixty days after the contract of sale was entered into, and this action was brought to recover the said purchase price.

*George H. Gordon,* for the appellant, contended that the doctrine of substantial performance does not apply, because the contract expressly limited the extent to which the scale might vary from the true weight, and because, by reason of its inaccuracy, the scale does not answer the purpose for which it was purchased.   *Manning v. School Dist.* 124 Wis. 84, 108; *Manitowoc S. B. Works v. Manitowoc G. Co.* 120

Wis. 1; *Meincke v. Falk,* 61 Wis. 623; *Mueller v. Burton,* 139 Wis. 384.

*Louis G. Bohmrich,* for the respondents.

WINSLOW, C. J.    The trial judge nonsuited the plaintiff on the ground that the evidence failed to show any breach of the contract of sale, but rather showed that such contract had been substantially performed within the definition of substantial performance given by this court in *Manning v. School Dist.* 124 Wis. 84, 102 N. W. 356, and *Mueller v. Burton,* 139 Wis. 384, 121 N. W. 152, 176.    After careful consideration of the evidence as preserved in the bill of exceptions, we are unable to say that the conclusion of the trial court, giving it that weight to which it is entitled, was wrong.

The sole defect claimed in the scale was that it did not fulfil the guaranty that it would weigh grain accurately to within one eighth of one per cent. of clean wheat, and the proof submitted consisted of tabulated statements of tests made for sixty-four days, beginning March 20, 1908, and ending about August 1st of the same year.    The scale in question was an automatic self-registering scale, so arranged as to weigh about twenty bushels of grain, record the weight automatically, dump the amount weighed, receive and weigh another load, and thus proceed as long as the machinery was running and grain was delivered to it.    It was located in the upper part of the mill and some sixty-five feet above what is called the hopper scale, which holds about 1,000 bushels before it discharges and into which the cleaned wheat first goes. After being weighed in the hopper scale it is taken by a pocket elevator up seven floors, dumped in a bin, and carried by pocket elevators from this bin to the Avery scale in question and there reweighed.

The tests before mentioned were comparisons between the weights registered by the scale in question and the weights recorded by the hopper scale.    Varying amounts, ranging from half a million to more than a million pounds per day,

were thus weighed upon the two scales during the sixty-four days when the tests were. made. There was sufficient evidence, *prima facie* at least, to show that the hopper scale was accurate.

.It will be unnecessary to insert the tabulated statement of tests made. During the month of March and the first half of April there was a considerable discrepancy between the two scales, which averaged considerably more than the allowed percentage, but beginning with April 15th the differences are slight and become very uniform.

The discrepancy allowed by the contract was one eighth of one per cent., or, expressed in decimals, .00125. The average discrepancy shown by the totals from April 15th to July 31st inclusive is .00141, and upon every day, except one, beginning with April 28th the weight registered by the scale in question is slightly less than that registered by the hopper scale, showing very clearly that the difficulty is one of adjustment rather than inaccuracy.

Taking the six weeks period from May 20th to June 30th inclusive, during which time tests were carried on during nineteen entire days, the discrepancies average .00122 plus, which is below the allowed percentage. In July there is a slight increase in the percentage, but quite a uniform one, which again indicates that the difficulty must be simply one of adjustment.

Considering the fact that comparison is made between a scale registering a thousand bushels at a load and one registering but twenty bushels and that the grain .is carried through two sets of elevators and one bin before being delivered on the second scale, we think that the infinitesimal difference between the discrepancy contracted against and the one actually shown cannot be considered as even tending to show that the scale did not, when properly adjusted, fulfil the contract requirements.

*By the Court.*—Judgment affirmed.